**DC INTERNATIONAL, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 18766.**

United States Court of Appeals Eighth Circuit.

Nov. 17, 1967.

W. C. Dannevik, Jr., Kansas City, Mo., for petitioner; Donald J. Quinn, Kansas City, Mo., and Arnold L. Burke, of Axelrod, Goodman & Steiner, Chicago, Ill., were with him on the brief.

John E. Nevins, Atty., N. L. R. B., Washington, D. C., for respondent; Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, N. L. R. B., Marcel Mallet-Prevost, Asst. Gen. Counsel, and Elliott Moore, Atty., N. L. R. B., were with him on the brief.

Before VOGEL, Chief Judge, and GIBSON and LAY, Circuit Judges.

VOGEL, Chief Judge.

DC International, Inc., the company-employer, has petitioned this court to review and set aside an order of the National Labor Relations Board issued against petitioner on February 1, 1967, following the usual proceedings under § 10 of the National Labor Relations Act, as amended (61 Stat. 136, 73 Stat. 519, 29 U.S.C.A. § 151 et seq.). The Board's decision and order are reported at 162 N.L.R.B. No. 129. The Board, in its answer to the petition, has requested enforcement of its order. Jurisdiction is noted.

In its decision and order, the Board found that International had violated § 8 (a) (1) of the Act by promising employee John A. Stanley benefits if he refrained from filing and processing grievances and threatened him with discharge and other reprisals for filing and processing grievances. Additionally, the Board also found that International discharged Stanley for his frequent and persistent filing of grievances and therefore further violated § 8(a) (1) of the Act. The Board's order directed that International cease and desist from actions repugnant to the Act and, inter alia, the reinstatement of Stanley and making him whole for any loss of pay he may have suffered by reason of the discharge, together with interest on such sum, the posting of appropriate notices, etc. We deny enforcement of the Board's order insofar as it is based on the discharge of employee Stanley.

The only controversy in this case surrounds the discharge of employee Stanley, the petitioner having failed to except to the findings as to offered benefits and threats. The case against the petitioner rests entirely upon the unsupported testimony of Stanley and inferences that may be drawn therefrom.

Other employees of the petitioner denied the truth of Stanley's assertions that he was offered benefits if he refrained from filing grievances against the company and was threatened with discharge if he continued to do so. The following, then, is a résumé of Stanley's testimony out of which the Board finds that petitioner discharged Stanley in violation of § 8(a) (1) of the Act.

Stanley was hired by International as a dock worker at its Kansas City terminal on May 7, 1965, and thirty days thereafter he became a member of the union. He was discharged on March 11, 1966. During that period of approximately ten months he filed and collected on four grievances, netting him a total of $40.74. The filing of the grievances relates to the alleged wrongful discharge in the following manner. On October 25, 1965, and November 4, 1965, Stanley filed grievances through the union claiming contract infractions by International in assigning overtime contrary to the seniority list. Both claims were paid to Stanley by a single check in the amount of $26.96 dated November 19, 1965. Stanley claims, however, that within a few weeks following the filing of the grievances Paul Leeman, a dock foreman for International, spoke to him, Stanley, with reference to the grievances and asked him if he did not want to do more than just work on the dock. When Stanley replied that he would prefer to be a tractor operator, Leeman said, "There you have a reason for not going around filing these grievances," and that Stanley should not cause Leeman and the company trouble if he wanted to get ahead.

On December 23, 1965, Stanley filed grievances alleging that dock foreman Austin Richardson and terminal manager Bill Murphy were handling freight in violation of the contract. On January 11, 1965, the Richardson claim was acted on favorably by the grievance committee and on January 13, 1966, Stanley received a check for $9.18 thereon. Stanley also recovered on the Murphy grievance charge, receiving a check in the amount of $4.60 thereon.

According to Stanley, shortly after he filed the grievances Richardson called him to the center of the dock and said, "You filed a grievance on me." Richardson is also reported to have said that if Stanley collected on the grievance he would fire him and that he was going to start by giving him a warning letter for leaving the dock. Stanley had earlier left the dock to retrieve his fountain pen which another employee had thrown on the roof of a trailer. No warning letter was issued at this time.

Stanley testified that shortly after the Murphy grievance was filed, Phillip Bock, a terminal operations manager from Chicago on special assignment to the Kansas City terminal, called Stanley to his office. According to Stanley, Bock told him that the grievance "put an inconvenience on" Murphy and made the latter "look bad" in Denver, the home office. Bock is supposed to have told Stanley to do them a favor and drop the grievance so Murphy would not get into trouble. When Stanley indicated resistance to withdrawing the grievance, Bock stated that the company had ways of getting rid of men over the union's head and that if the grievance were not dropped Murphy would probably fire Stanley over it. The grievance was not dropped and was adjusted and paid in Stanley's favor.

According to Stanley, on December 29, 1965, dock superintendent Bryan Wormell approached Stanley, who was putting a bandage on one of his feet after a minor accident. Wormell, according to Stanley, told him that he should start looking for another job because he was "accident prone" and that he was a "trouble maker" and was "trying to cause trouble all the time". Wormell is supposed to have added, "You had better start looking for another job."

All of the foregoing findings are based on the unsupported testimony of Stanley, denied by all other witnesses who testified.

On February 1, 1966, and February 9, 1966, Stanley received warning letters regarding his calling in late when absent or tardy. These late calls violated the

company's rule that notice should be given to the company by a telephone call at least one hour before each shift started. The warning letter of February 1, 1966, was addressed to John A. Stanley and read as follows:

"Dear John:

"On January 31st your wife called at ten minutes *after* your starting time and advised you would not be to work due to a cold.

"The last time you were absent from work and did not notify your foreman until after your starting time, you were advised verbally that in all cases you are to notify your foreman at least *one hour before* your starting time in order for us to obtain someone to work your shift.

"As this is the second time this has happened, I have no alternative but to issue you this warning letter per the contract now in effect."

The letter of February 9, 1966, also addressed to Stanley, is as follows:

"Dear John:

"On February 4th you reported for work at 7:16 PM while your starting time is actually 3:30 PM—or, in other words, approximately four hours after your starting time.

"This is your second warning letter in regard to not calling your dock foreman when you are going to be late or absent from work.

"Your continuation of such negligence will result in further disciplinary action being taken up to and including your dismissal."

On March 11, 1966, the employer sent the following letter to Stanley:

"Dear John:

"On February 1st by certified mail you were advised with a warning letter that you were to notify your foreman at least one hour before your work shift, if you were not going to be able to be at work.

"Again on February 9th you were issued a warning letter advising that you were to notify your foreman at least one hour before your work shift.

"On March 10th at 4:00 P.M. (30 minutes *after* your starting time) you called the dispatcher Joe McClanahan and advised him that you would be in later. When he asked you how much later you said in an hour or hour and a half. At 5:00 P.M. an hour and a half after your starting time you did not show for work, therefore, I have no alternative but to dismiss you from the employ of DC Trucking Company, Inc."

Stanley does not dispute the facts as set forth in the letters and upon which discharge was allegedly based. His excuses as given to the dock superintendent were that his wife was ill, that he had no telephone and that this made it difficult for him to comply with the company rules. The record indicates that Stanley's landlady had a telephone and that there was one available across the street. He claims to have been assured by dock superintendent Wormell that the company understood the problems and that he, Wormell, didn't think it would go any further.

On March 22, 1966, the local grievance committee met and passed on a number of grievances, including that of Stanley, who claimed a violation of Article 44 of the agreement dealing with discharge or suspension, which states in pertinent part:

"ARTICLE 44.

"Discharge or Suspension

"The Employer shall not discharge nor suspend any employee without just cause, but in respect to discharge or suspension shall give at least one warning notice of the complaint against such employee to the employee, in writing, and a copy of the same to the Local Union and job steward affected, * *.

"Discharge must be by proper written notice to the employee and the Local Union affected. Any employee may request an investigation as to his discharge or suspension. Should such in-

vestigation prove that an injustice has been done an employee, he shall be reinstated. The Joint City Committee, the Joint State Committee and the Joint Area Committee shall have the authority to order full, partial, or no compensation for time lost. Appeal from discharge, suspension or warning notice must be taken within ten (10) days by written notice and a decision reached within thirty (30) days from the date of discharge, suspension or warning notice. * * * "

The grievance committee of six consisted of three union committee members and three employer committee members. Walter Casey appeared for the union and also for Stanley. Cecil Zeis appeared in behalf of the company. Stanley was also present. Casey, arguing in behalf of the union and Stanley, claimed that the tardiness and absenteeism of Stanley were brought about by reason of the illness of his wife, that the discharge was unjust and unwarranted and he asked that the grievance committee return Stanley to work with full seniority and full back pay. Zeis, representing the employer, called attention to the facts in connection with the warning letters sent to Stanley and asked that the grievance be denied. Nothing was said by either side about the four grievances filed by Stanley and upon which he had collected. Stanley was asked if he had anything to say, to which he replied, "The case is pretty well covered." The claim of Stanley and the union was unanimously denied by the grievance committee.

Subsequently, the General Counsel filed a complaint against petitioner based on the charge by Stanley that his employment had been terminated by reason of his membership and activities in behalf of the union, promise of benefits if Stanley refrain from filing grievances, and threats in the event he failed to do so. The complaint was subsequently amended to include the following charge:

"V

"(c) Have an employee arrested because he filed unfair labor practice charges under the Act with the Board —Bryan Wormell, August 16, 1966."

The complaint was referred to a Trial Examiner who, after a full hearing, concluded and found that International had been guilty of violations of § 8(a) (1) of the Act in promising benefits to Stanley if he refrained from filing and processing grievances and in threatening that he would not get ahead with the company and with discharge if he continued to file and process grievances.

Concerning the charge that International violated the Act by having Stanley arrested on August 16, 1966, the Examiner determined that on such date, which was after he had been discharged and was no longer working for International, Stanley was found on International's dock talking to a company employee. He refused to leave when requested to do so by the foreman, who thereupon called the police. Stanley was arrested, subsequently tried in a local court and fined $25 for disturbance of the peace. The Examiner recommended that this particular charge of the General Counsel be dismissed.

As to the discharge of Stanley, the Examiner applied the principles enunciated by the Board in Spielberg Mfg. Co., 1955, 112 N.L.R.B. 1080, wherein the Board, in dealing with a related problem passed upon by an arbitration panel, stated at page 1082:

"In summary, the proceedings appear to have been fair and regular, all parties had agreed to be bound, and the decision of the arbitration panel is not clearly repugnant to the purposes and policies of the Act. In these circumstances we believe that the desirable objective of encouraging the voluntary settlement of labor disputes will best be served by our recognition of the arbitrators' award. Accordingly, we find that the Respondent did not violate the Act when, in accordance with the award, it refused to reinstate the four strikers. We shall therefore dismiss the complaint in its entirety."

He specifically found that the grievance committee's hearing on March 22, 1966,

"was fair and regular, afforded an opportunity for all issues to be litigated, and the decision of the committee is not clearly repugnant to the Act". He therefore recommended that the complaint as to Stanley's discharge be dismissed.

 The Board adopted the Examiner's findings, conclusions and recommendation with the exception that the Board found that International had discharged Stanley in violation of § 8(a)(1) of the Act and it accordingly directed that Stanley be offered immediate and full reinstatement to his former or substantially equivalent position without prejudice to his seniority or other rights and privileges previously enjoyed and to make him whole for any loss of pay he may have suffered by reason of discrimination against him by payment to him of money equal to that which he would have earned as wages from the day of the discrimination to the date of reinstatement, less any net earnings during such period. The Board's stated reason for not following the Examiner's findings and recommendations and for not applying *Spielberg* and Modern Motor Express, 1964, 149 N.L.R.B. 1507, which followed and relied on *Spielberg* and was cited by the Examiner, was that the issue of pretextual discharge was never raised, directly or inferentially, before the grievance committee and it determined that International had "seized upon Stanley's failure to call in on time in order to rid itself of an employee who had incurred management's displeasure by his frequent and persistent filing of grievances." We are forced to disagree with the Board.

It should be clear that Stanley was an unpopular employee for at least two reasons. On the one hand he filed grievances which undoubtedly were a nuisance to his superiors.[1] Stanley also caused his superiors difficulties by failing to follow company rules regarding reporting to work. The company alleges the latter, valid reason motivated Stanley's discharge, while the Board has found that Stanley's persistent filing and processing of grievances against the company, a valid union activity, was the grounds for his discharge. As we noted in N. L. R. B. v. Ace Comb Co., 1965, 342 F.2d 841, at 847:

"It has long been established that for the purpose of determining whether or not a discharge is discriminatory in an action such as this, it is necessary that the true, underlying reason for the discharge be established. That is, the fact that a lawful cause for discharge is available is no defense where the employee is *actually* discharged because of his Union activities. *A fortiori,* if the discharge is *actually* motivated by a lawful reason, the fact that the employee is engaged in Union activities at the time will not tie the employer's hands and prevent him from the exercise of his business judgment to discharge an employee for cause."

Obnoxious conduct on the employee's part cannot insulate him from a legal discharge by the company, and where a proper motive for the discharge can as reasonably be inferred as an improper motive, the discharge should not be set aside by the Board where the more substantial evidence supports the proper motive. N. L. R. B. v. Ace Comb Co., supra; Fort Smith Broadcasting Co. v. N. L. R. B., 8 Cir., 1965, 341 F.2d 874; N. L. R. B. v. Fox Manufacturing Co., 5 Cir., 1956, 238 F.2d 211, 215. We find here that there was no substantial evidence upon which to base the Board's conclusion that Stanley was discharged in violation of the Act. The Board's determination to the contrary rested upon the completely unsupported statements of Stanley which were contradicted by all witnesses who testified thereon.

1. The filing of such grievances by employees is not an unusual occurrence, however, and Stanley's claims were not uncommon and were very minor in relation to grievances filed by other employees. Some employees never file grievances. Others "have quite a few, such as this." [Stanley's four grievances.]

It is relevant to note at this point that Stanley was not an entirely credible witness, as at least two inconsistencies between statements made on his application form and statements made before the Examiner are obvious. In his application, Stanley claimed to have a high school education, with the form indicating he completed grades ten through twelve at Aurora High School in Colorado. Stanley's testimony, however, admits to only a ninth grade education. Stanley's employment application also claimed that he had received an honorable discharge from military service. Before the Examiner Stanley admitted he received an undesirable discharge and, further, when asked what the basis for the undesirable discharge was, he first stated he would only tell the Examiner, and then stated that he did not recall the facts surrounding the discharge. To draw any inference at all from the unsupported testimony of such a witness requires more imagination than deliberation. For the Board to have based an inference of pretextual discharge solely on such testimony indicates the paucity of evidence in the record on which the order requiring Stanley's reinstatement was based.

The meager evidence in support of the Board's inference is in contrast to the significant evidence in the record that Stanley continued to violate company rules by failing to notify the company that he intended being absent or would have to be late. Here International's discharge of Stanley rested on legal grounds, the facts of which are not in dispute. In addition to oral warnings, two formal written warning notices were sent prior to discharge, where the contract between the union and the employer provided that only one would be necessary to sustain a discharge. By far the great preponderance of the evidence supports the finding that Stanley was discharged for absenteeism and tardiness following amply sufficient warnings as to his violation of company rules. We think Judge Mehaffy's statement for this court in Fort Smith Broadcasting Co. v. N. L. R. B., 8 Cir., 1965, 341 F.2d 874, is applicable. He said at page 878:

" * * * If discrimination can be inferred from mere union membership and a supervisor's general antagonism for unions, that inference disappears when overwhelming evidence supports the more reasonable conclusion that valid cause motivated the employee's suspension and ultimate termination. See NLRB v. Stafford, 206 F.2d 19, 23 (8th Cir. 1953)."

See, also, N. L. R. B. v. Ace Comb Co., supra, 342 F.2d at page 848.

Being conscientiously convinced that the evidence supporting the Board's determination as to Stanley is not substantial " * * * when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view", Universal Camera Corp. v. Labor Board, 1950, 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456, we deny enforcement of that portion of the Board's order relating to Stanley's reinstatement.