KELLWOOD COMPANY, OTTENHEIM-ER BROS. MFG. DIV., Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent,

International Ladies' Garment Workers' Union, AFL–CIO, Intervener.

INTERNATIONAL LADIES' GARMENT WORKERS' UNION, AFL–CIO, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

Nos. 19295, 19364.

United States Court of Appeals Eighth Circuit.

May 9, 1969.

As Amended on Denial of Rehearing June 5, 1969.

---

C. Dale Stout, of Kullman & Lang, New Orleans, La., for petitioner Kellwood Co., Ottenheimer Bros. Mfg. Div., Richard C. Keenan, New Orleans, La., on the brief.

John T. Lavey, of McMath, Leatherman, Woods & Youngdahl, Little Rock, Ark., for petitioner International Ladies' Garment Workers' Union, AFL–CIO.

John S. Irving, Atty., N. L. R. B., Washington, D. C., for respondent, Ar-

nold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Richard S. Rodin, Atty., N. L. R. B., on the brief.

Before VAN OOSTERHOUT, Chief Judge, and MATTHES and BRIGHT, Circuit Judges.

VAN OOSTERHOUT, Chief Judge.

■ These consolidated cases are before the court on the petitions of Kellwood Company, Ottenheimer Bros., Mfg. Div., hereinafter called Kellwood (No. 19,295), and International Ladies' Garment Workers' Union, AFL–CIO, hereinafter called Union (No. 19,364), to review, and Kellwood's petition to set aside an order of the National Labor Relations Board issued against the company on April 18, 1968. The Board has answered the petitions and has cross-petitioned for the enforcement of its order. The Board's decision and order are reported at 170 NLRB No. 183. The court has jurisdiction of this proceeding under §§ 10(e) and 10(f) of the National Labor Relations Act as amended (29 U.S. C.A. § 151 et seq.), the unfair labor practices alleged having occurred in Lonoke, Arkansas, within this judicial circuit.

Separate and distinct issues are raised by Kellwood's petition and the Union's petition. The petitions will be treated separately.

No. 19,295. Kellwood's Petition.

The Board in agreement with its Trial Examiner found Kellwood violated § 8 (a) (1) of the Act by interrogating and threatening employees with respect to their Union activities, by soliciting an employee to engage in surveillance at a Union meeting, by promising economic benefits if employees refrained from Union activity, and by promising and granting a general wage increase for the purpose of affecting the organizational efforts of the Union. The Board also found that the company violated § 8(a) (3) of the Act by discharging employee Mary Bearden because of her activity on behalf of the Union.

Kellwood asserts that the Board's order should be set aside and enforcement of the order denied for the reason that there is no substantial evidence upon the record as a whole to support the Board's findings that Kellwood violated §§ 8(a) (1) and 8(a) (3) of the Act. Kellwood further contends that the Board's remedial order and prescribed notice to the employees is too broad and is not warranted by the record or the law.

■ Our examination of the record satisfies us that when the standards for review set out in Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456, are applied there is substantial evidentiary support upon the record as a whole for the Board's determination, in agreement with its Examiner, that the § 8(a) (1) violations are established. Kellwood has offered testimony with respect to such asserted violations which contradicts the testimony of the Board's witnesses. The Examiner and the Board credited the testimony of the Board's witnesses. Our examination of the record satisfies us that the Examiner's report, adopted by the Board, adequately demonstrates substantial evidentiary support exists for the findings made with respect to all of the § 8(a) (1) violations found. No useful purpose will be served by a detailed discussion of the evidence supporting the findings.

The parties in their briefs deal separately with the § 8(a) (1) violation based on unlawful granting of a wage increase. The charges here involved grew out of events occurring at the Lonoke, Arkansas, plant of Kellwood. Lonoke is one of thirty-six plants operated by Kellwood, engaged in manufacturing wearing apparel. There are about three hundred and fifty people employed at Lonoke. The Lonoke employees have no bargaining representative and no petition for election has ever been filed.

The Union began an organizational campaign at Lonoke in February 1966, which reached its peak in July and Au-

gust, 1966. On July 9, 1966, Kellwood executives and division heads at a meeting agreed to grant a country-wide wage increase of ten cents an hour to employees, effective August 1, with announcement thereof on July 18.

Kellwood relies upon Southern Foundation, a Division of Kellwood Co., v. N. L. R. B., 6 Cir., 406 F.2d 1063, where the court summarily refused to enforce the Board's determination of a § 8(a) (1) violation based upon the same general wage increase applied to Kellwood's Alamo, Tennessee, plant. Factual distinctions exist between that case and our present case. In the case before us, reliance is placed upon the timing in relation to the Union's organizational efforts and the method of announcement of the wage increase. The Examiner states:

"The announcement itself is also amply demonstrative of antiunion considerations. McKibben made references that his employees 'did not have to pay one cent in union dues to get this increase. It was not necessary for you to call on any union outsiders to speak in your behalf in order to get this raise.' McKibben went on to tell employees that the Company always followed the policy of improving wages and conditions, and then stated, 'No union can force us to do more than that. This increase should be proof that a union is not needed by a company like ours that treats its employees fairly and rewards them for their good work.' McKibben then concluded his written and prepared remarks by stating, 'You will receive the same rates of pay, the same benefits and the same fair treatment as those employees [in the Respondent's Little Rock plants] without having to pay union dues or union fees.' * * * It appears to me that this issue is once and-for-all put to rest with the admissions of Guthunz and Wenzel that one of the reasons for this increase was to demonstrate to the employees in their plants that no union was needed in order to gain benefits."

As stated by the Board in Hudson Hosiery Co., 72 NLRB 1434, 1436–37, "What is unlawful under the Act is the employer's granting or announcing such benefits (although previously determined upon bona fide) for the purpose of causing the employees to accept or reject a representative for collective bargaining."

In N. L. R. B. v. Erie Resistor Corp., 373 U.S. 221, 228, 83 S.Ct. 1139, 1145, 10 L.Ed.2d 308, the Supreme Court observes, "Conduct which on its face appears to serve legitimate business ends in these cases is wholly impeached by the showing of an intent to encroach upon protected rights. The employer's claim of legitimacy is totally dispelled."

The timing, the content and the manner of the wage increase announcement support the Board's determination that such activity on the part of the employer constitutes a § 8(a) (1) violation. These factors do not make the granting of the wage increase itself a violation of § 8(a) (1) and any finding of the trial examiner or the Board to that effect is rejected for lack of evidentiary support on the record as a whole. See Southern Foundations v. N. L. R. B., 6 Cir., 406 F. 2d 1063.

We find no substantial evidentiary support for the Board's finding that Kellwood violated § 8(a) (3) by discriminatorily discharging Mary Bearden. The discriminatory discharge issue has been fully considered by this court on numerous occasions and the governing law appears to be well established. See Illinois Ruan Transp. Corp. v. N. L. R. B., 8 Cir., 404 F.2d 274, 278; DC International Inc. v. N. L. R. B., 8 Cir., 385 F.2d 215, 220; Singer Co., Wood Products Div., v. N. L. R. B., 8 Cir., 371 F.2d 623, 624; N. L. R. B. v. Monroe Auto Equip. Co., 8 Cir., 368 F.2d 975, 979; N. L. R. B. v. Comfort, Inc., 8 Cir., 365 F.2d 867, 871.

It is established by our prior cases that absent a contractual provision governing the right to discharge, an employer has an absolute right to hire and discharge employees at will provided that

protected union activity is not the motivating cause for the discharge. A justifiable ground for discharge is no defense if it is a mere pretext and not the moving cause for the discharge. On the other hand, pro-union activities do not insulate an employee against a lawful discharge for cause. The burden of proving an improper motivation in making the discharge is upon the General Counsel. An employer's general hostility to the Union does not standing alone supply an unlawful motivation for a specific discharge for good cause. As is stated in N. L. R. B. v. Comfort, Inc., supra, 871 of 365 F.2d:

> "The inference that an employee was discharged because of his union activity must be based upon evidence, direct or circumstantial, not upon mere surmise or speculation. * * * The burden of proving an improper motivation for discharge is upon the Board. * * *"

The substantial evidence test on the record as a whole governs our decision here. When the law as above set out is applied to the record facts before us, we are convinced that the Board's finding of a § 8(a)(3) violation in the discharge of Bearden is not supported by substantial evidence. The record discloses without dispute that Bearden was a slow worker and that she consistently fell below the established work quota which was met by most of the employees performing similar work. She was at or near the bottom of the list in production. A retraining program was inaugurated on September 28, 1966, in which seventeen of the company's employees participated. Bearden and Hinchcliff, whose case is discussed hereinafter, were in the program. Bearden, despite repeated efforts by supervisory employees to aid her in speeding up her work, not only failed to improve but showed no interest whatsoever in trying to speed up her work. She resisted efforts of supervisor Elcan and Smith to aid her and in substance repeatedly told them that she did not care and that she was not going to try. Superintendent McKibben was kept advised as to these developments and on November 11 he discharged Mary Bearden and several other employees because of unsatisfactory production. Bearden after notified of her charge told Elcan, "I don't blame anybody but myself."

The evidence does not establish that Bearden was one of the principal Union leaders. The Union submitted three lists of members of the Union organizing committee which totalled some thirty members. Bearden's name first appeared on the last list which was the one submitted on August 8. Bearden admitted that she signed up no new members and her activity consisted principally of wearing a Union badge upon occasion and discussing the Union with fellow employees. There is no evidence that any other employee was discharged by reason of Union activity. The Union activity had passed its peak at the time of the retraining program and the discharge. While there is evidence that the company was opposed to the unionization of its employees, there is no substantial evidence that such objection went to the extent of discharging employees for Union activity.

Kellwood's complaint that the Board's order is too broad and far-reaching lacks merit. Much of the complaint falls as a result of our decision that no § 8(a)(3) violation has been established. Of course references in the notice relating to the § 8(a)(3) violation must be eliminated. In other respects, we find that the Board in promulgating its order and notice was acting within its statutory authority "to mold remedies suitable to practical needs." See N. L. R. B. v. Seven-Up Bottling Co., 344 U.S. 344, 349–352, 73 S.Ct. 287, 291, 97 L.Ed. 377.

Upon Kellwood's petition in case No. 19,295 the Board's order finding a § 8(a)(3) violation with respect to the discharge of Bearden is vacated and set aside, and the additional relief sought is denied. Upon the Board's cross-petition, enforcement is ordered with respect to the § 8(a)(1) violations and in other respects denied.

No. 19,864. The Union's Petition.

The issue presented by the Union's petition for review is whether the Board erred in upholding the Examiner's action in granting the General Counsel's motion to delete from the consolidated complaint the allegation that Nettie Hinchcliff was discharged in violation of § 8(a) (3) of the Act.

On December 30, 1966, the Regional Director, after investigating charges made by the Union, issued a consolidated complaint and notice of hearing wherein it was alleged that Kellwood had violated § 8(a) (1) of the Act and had further violated § 8(a) (3) of the Act by discriminatorily discharging Bearden and Hinchcliff. Kellwood answered denying the allegations of the complaint. Hearing on the consolidated complaint was commenced before the Trial Examiner on February 14, 1967. After the receipt in evidence of some exhibits and a stipulation of the parties, the General Counsel moved to dismiss the portion of the complaint alleging the illegal discharge of Hinchcliff, stating as grounds that " * * * a post-complaint and pre-trial investigation of the allegations made by the Charging Party [the Union] in regard to * * * Nettie Hinchcliff, turned up certain facts which forced the Regional Director of the 26th Region, acting on behalf of General Counsel, to believe that there was not a prima facie case of discriminatory discharge in regard to Nettie Hinchcliff."

The Union resisted on the ground that the motion would deprive Hinchcliff of her day in court and of due process and that it would deprive the Union as charging party of its right to present evidence in support of the charge. The Trial Examiner granted the General Counsel's motion to delete the charge with respect to Hinchcliff, stating as a basis therefor, "I have always gone under the Rule in 137 N.L.R.B. 1674 that the General Counsel has final authority to add or delete, from or to the Complaint, and on the basis of that general procedure and reliance upon the judgment of the General Counsel, * * * I think under the circumstances here the only thing I can do is to grant General Counsel's motion to delete. * * * "

The Union sought special permission from the Board to appeal from the Examiner's ruling. Such motion was denied on February 17, 1967, at which time the hearing before the Examiner was still in progress. The Union then made an offer of proof in support of the Hinchcliff charge which had been rejected by the Examiner. The Union filed a post-hearing motion requesting the Examiner to reconsider his ruling. Such motion was denied. The Union excepted to the ruling; the Board affirmed.

Section 3(d) of the Acts provides, "He [the General Counsel] shall have final authority, on behalf of the Board, in respect of the investigation of charges and issuance of complaints under section 10, and in respect of the prosecution of such complaints before the Board, * * * " Section 102.17 of the Board's Rules and Regulations provides:

"Amendment.—Any such complaint may be amended upon such terms as may be deemed just, prior to the hearing, by the regional director issuing the complaint; at the hearing and until the case has been transferred to the Board pursuant to § 102.45, upon motion, by the trial examiner designated to conduct the hearing; and after the case has been transferred to the Board pursuant to § 102.45, at any time prior to the issuance of an order based thereon, upon motion, by the Board."

Thus during the course of the hearing before the Examiner authority was vested in the Examiner to permit or reject amendments subject, of course, to review by the Board.

It is quite true as asserted by the Union that once a hearing on a charge that has been filed has commenced, the charging party has substantial rights to participate in the proceeding. He has a right to appear at the hearing in person and by counsel and to call, examine and cross-examine witness-

es. 29 C.F.R. 102.38 and 101.10(b) (2). He is entitled to be heard by the Examiner and the Board and is entitled to a review of an adverse Board decision by the Court of Appeals. 29 U.S.C.A. § 160(f).

When the hearing stage is reached, the General Counsel is cast in the role of a prosecutor in a judicial proceeding. His authority does not extend to the control of the proceedings. The allowance or disallowance of an amendment at the trial stage by the Examiner or by the Board is a judicial function. The exercise of such function involves the exercise of judicial discretion. See Frito Co. v. N. L. R. B., 9 Cir., 330 F.2d 458, 465.

The parties agree that the test to be applied to the controverted ruling is whether the Examiner abused his discretion in permitting the amendment. The issue presented is a close and difficult one. Whether there has been an abuse of discretion must ordinarily be determined on a case-to-case basis, upon the basis of the facts presented by the record.

The Trial Examiner in the light of § 3(d) of the Act is entitled to give weight to the representations of the General Counsel as the prosecutor. The numerous unfair labor practice cases which have come before us indicate a practice on the part of the General Counsel to diligently prosecute unfair labor charges. However, the right of the charging party to offer evidence cannot be ignored.

Inasmuch as the ruling on the motion to dismiss the Hinchcliff charge was again raised and considered on the Union's motion to reconsider made after the Union's offer of proof and after the close of all of the evidence, we need not pass upon the validity of the initial ruling made at the time of the motion. The more vital issue is whether the Examiner erred in denying the motion to reconsider. The record reflects that the Union made an extensive offer of proof in support of the Hinchcliff charge. The tendered evidence with respect to Mrs. Hinchcliff's Union activity is rather weak. The offer of proof shows that Mrs. Hinchcliff did not join the Union until June and that her subsequent activities were rather modest and that such activities were no greater than those of Bearden, whom we have found was not discriminatorily discharged. Evidence as to Mrs. Hinchcliff's participation in the retraining program and her unsatisfactory performance as a worker is in the record in connection with the performance records of various workers introduced in connection with the Bearden charge. It is our view based upon the record before the Examiner at the time he passed upon the motion for reconsideration that the record fails to support the Union's contention that the Examiner abused his discretion in granting the amendment. Such action was affirmed by the Board and in our view the Board committed no error in upholding the ruling. Moreover, it would appear that no useful purpose would be served in remanding this case to the Board for an evidentiary hearing on the Hinchcliff charge. If we assume that the Hinchcliff testimony as to facts would be as stated in the offer of proof, the record considered as a whole would not warrant a finding that Hinchcliff was discriminatorily discharged in violation of § 8(a) (3).

The Union's appeal in case No. 19,364 is dismissed.