TUTTLE, Circuit Judge:
This case presents a petition to review a final order of the National Labor Relations Board. Jurisdiction is based on § 10(f) of the National Labor Relations Act, 29 U.S.C. § 160(f). The only issue before the court is whether the Board properly dismissed a complaint alleging that the Glaziers and Glass Workers Union, Local 767 [“Local 767”] committed an unfair labor practice by filing suit in federal district court under § 301 of the Act, 29 U.S.C. § 185.[1] Based on our conclusion that the Board’s order is consistent with long-standing Board precedent and with the policies of the Act, the petition to set aside the order is denied.
On August 1, 1972, Local 767 executed a collective bargaining agreement with a group of Reno, Nevada employers, including Sierra Glass Service. Section 2 of the agreement provided:
The employers shall recognize Glaziers and Glass Workers, Local Union # 767, as the exclusive representative for the purpose of collective bargaining for all of the glaziers and glass workers employed by the Employers within the territorial jurisdiction of the Local Union.
During the negotiations leading to the execution of this agreement, Sierra Glass was represented by its president, Warren Welsh, who signed the agreement under the name “Sierra Glass.”
At the time the agreement was signed, Sierra Glass operated two Reno shops, one at 645 Sunshine Lane [“645”] and a second at 230 Sunshine Lane [“230”]. Before the administrative law judge, Welsh described the scope of the business at 645 as follows: “We do auto glass, replacement work where glass is broken, we replace it, and screens, shower doors.” Welsh also testified that prior to the sale of 230 in 1973, the employees in that shop were engaged in storefront and commercial work. The terms of the Sierra Glass-Local 767 contract in no way restrict the agreement’s applicability to one group of employees or another.[2] Moreover, *102 Welsh conceded that during negotiations he never communicated to Local 767’s representative, Kendall Bartlett, any intention on Sierra Glass’ part to so restrict the agreement. Neither party ever attempted to negotiate modifications of the original agreement.
The causative elements of the present dispute are quite plain — following the signing of the 1972 agreement, Welsh did not apply the terms of that agreement to 645 employees. He operated 645 as a nonunion shop and 230 as a union shop. Accordingly, 645 employees never have received the union-scale wages, fringe benefits or overtime pay specified in the agreement, and Sierra Glass has not contributed to Local 767’s health and welfare or pension funds. After various efforts to gain full compliance with the agreement had failed,[3] Local 767 filed suit in the United States District Court for the District of Nevada, seeking enforcement of the agreement.[4]
Prior to answering the union’s complaint, the employees of Sierra Glass, though David J. Bergman, filed a charge with the National Labor Relations Board on November 17, 1975. The charge alleged that: The Glaziers & Glassworkers, Local Union 767, et al., have instituted a suit in the United States District Court for the District of Nevada . . . whereby they falsely assert to be the authorized representative of the undersigned for the purpose of collective bargaining and seek to enforce the wages, benefits and working conditions of a labor agreement covering former employees of employer engaged in the building trades. The undersigned have not, in the past, authorized the Union to represent them for bargaining purposes and do not and have not authorized them as their present bargaining agent, and Union’s suit is clearly a sub-rosa attempt to gain de facto recognition as the undersigned’s bargaining agent against their will and in violation of their right to refrain from such Union representation.
A timely complaint, alleging an unfair labor practice under § 8(b)(3) of the Act, was issued by the appropriate Regional Director on May 18, 1976.
A full hearing on the matters raised in the complaint was conducted before an administrative law judge on August 24-25, 1976. In a Decision and Order dated Octo *103 ber 12, 1976, the ALJ, after making extensive findings of fact,[5] concluded as a matter of law that Local 767 had not violated § 8(b)(3) “as alleged in the complaint” and recommended dismissal. A three-member panel of the Board adopted the ALJ’s recommended order and dismissed the complaint. Glaziers & Glass Workers, Local Union 767, 228 N.L.R.B. No. 10 (1977).
In Clyde Taylor, d/b/a Clyde Taylor Co., 127 NLRB 103 (1960), the Board held that “while the making of a threat ... to resort to the civil courts as a tactic calculated to restrain employees in the exercise of rights guaranteed by the Act” was a violation of § 8(a)(1) of the Act, an actual suit was not similarly unlawful. Id. at 108-109. The stated rationale for the holding was that
the Board should accommodate its enforcement of the Act to the right of all persons to litigate their claims in court, rather than condemn the exercise of such right as an unfair labor practice.
Id. at 109. Since Clyde Taylor, the Board consistently has held that, despite the coercive effect upon employees’ statutory rights, the filing of a civil suit by an employer or by a union cannot be found to be an unfair labor practice. E. g., Sullivan & Associates, 230 NLRB No. 55 at 4 (1977); Los Angeles Building & Construction Trades Council, AFL-CIO, 217 NLRB 946, 948 (1975); Local 259, UAW, 221 NLRB 656, 661 (1975); Fashion Fair, Inc., 159 NLRB 1435, 1449 (1966); Smith Steel Workers, 174 NLRB 235, 241, enf’d in rel. part sub nom., Smith Steel Workers v. A. O. Smith Co., 420 F.2d 1, 9 (7th Cir. 1969). At least two other courts of appeals have followed the clear expression of Board policy found in Clyde Taylor. See Lodges 743 & 1746,IAMAW v. United Aircraft Corp., 534 F.2d 422, 464-65 (2d Cir. 1975), cert. denied, 429 U.S. 825, 97 S.Ct. 79, 50 L.Ed.2d 87 (1976) (applying Clyde Taylor in absence of any showing of malicious prosecution or abuse of process); Smith Steel Workers v. A. O. Smith Co., 420 F.2d 1, 9 (7th Cir. 1969).
The Board in the present case, consistent with its long-standing position, relied on Clyde Taylor to conclude that Local 767’s institution of the § 301 suit was not an unfair practice. Petitioner argues that, under the circumstances, the rationale of Clyde Taylor and its progeny is not applicable.
First, petitioner suggests that cases following Clyde Taylor generally involve underlying suits seeking monetary damages rather than resolution of union representation issues. It is true that several of the Board’s decisions have involved suits for actual and/or punitive damages. E. g., Lodges 743 & 1746, IAMAW v. NLRB, supra. However, the Board, and the courts, have applied Clyde Taylor in a variety of other contexts as well. E. g., Fashion Fair, Inc., supra (suit to enjoin picketing); Airport Limousine Serv., Inc., 231 NLRB No. 149 at 9-10 (1977) (attempt by receiver of bankrupt employer to disavow collective bargaining agreement in bankruptcy court); Local 259, UAW, supra (suit to confirm arbitrator’s award); Retail Clerks Union, Local 770, 218 NLRB 680, 683 (1975) (same); Smith Steel Workers, supra (suit to compel arbitration); DC International Inc., 162 NLRB 1383, 1394, enforcement denied in part on other grounds, 385 F.2d 215 (8th *104 Cir. 1967) (prosecution of discharged employee during pendency of charge). Indeed, the underlying civil litigation in Clyde Taylor itself involved an employer’s suit for an injunction. 127 NLRB at 109. Moreover, Clyde Taylor has been deemed controlling in instances where, as here, the litigation was premised upon alleged contractual violations, Sullivan & Associates, supra; Los Angeles Building & Construction Trades Council, AFL-CIO, supra; Operating Engineers, Local 12, 220 NLRB 530 (1975), regardless of the merits of the claims. Id. at 538-39.
Petitioner also points out that the Board itself has deviated from the general rule announced in Clyde Taylor. Our research confirms that the Board, in some instances, has departed from Clyde Taylor to hold that filing suit is an unfair labor practice. E. g., United Stanford Employees, Local 680, 223 NLRB No. 49 (1977); International Organization of Masters, Mates & Pilots, 224 NLRB 1626 (1976); Wisconsin River Valley Dist. Council of Carpenters, 218 NLRB 1063 (1975); Booster Lodge No. 405, IAM, 185 NLRB 380 (1970), enf’d as modified, 148 U.S.App.D.C. 119, 459 F.2d 1143 (1972), rev’d, 412 U.S. 67, 93 S.Ct. 1952, 36 L.Ed.2d 752 (1973). However, the facts of this case do not bring the union’s suit within any of the recognized exceptions.
We conclude that petitioner has failed to advance any persuasive justification for a departure from Clyde Taylor in this instance. The union filed suit only after its efforts to negotiate the contractual disputes had failed. There is no suggestion that the union failed to take all requisite preliminary steps before filing suit or that the union’s action approaches malicious prosecution or abuse of process. Suit was filed to enforce the terms of a contract which, on its face, regulates wage and fringe benefits with respect to 645 employees. There is no indication the union did anything other than attempt, in good faith, to enforce a facially valid and binding labor agreement. On these particular facts, we hold that the Board’s reliance upon Clyde Taylor, and therefore its dismissal of the complaint, was proper. See Lodges 743 & 1746, IAMAW v. United Aircraft Corp., 534 F.2d 422, 464-65 (2d Cir. 1975), cert. denied, 429 U.S. 825, 97 S.Ct. 79, 50 L.Ed.2d 87 (1976).
The Board’s persistent dedication to the principles enunciated in Clyde Taylor and our adherence to those principles here are, we believe, consonant with the Act’s overall scheme. Through § 301(a) of the Act, see note 1 supra, Congress provided federal jurisdiction over contractual disputes between employers and unions, without regard to limitations imposed in other contexts. Compare 28 U.S.C. § 1331 and 28 U.S.C. § 1332 with 29 U.S.C. § 185. As stated by the Supreme Court, § 301(a) “reflects congressional recognition of the vital importance of assuring the enforceability of [collective bargaining] agreements.” Dowd Box Co. v. Courtney, 368 U.S. 502, 509, 82 S.Ct. 519, 523, 7 L.Ed.2d 483 (1962); see Retail Clerks Union, Local 1222 v. Alfred M. Lewis, Inc., 327 F.2d 442, 445 (9th Cir. 1964). Moreover, the legislative history shows that one of the congressional objectives in enacting § 301 was “the elimination of obstacles to suit in federal courts.” International Longshoremen’s & Warehousemen’s Union v. Juneau Spruce Corp., 342 U.S. 237, 242, 72 S.Ct. 235, 239, 96 L.Ed. 275 (1952). At least in the circumstances presented here, we think that it would be inconsistent with the basic principles underlying § 301 to burden a labor union or an employer seeking judicial enforcement of its contract rights with the threat that such action may precipitate an unfair labor practice charge and its concomitant administrative proceedings. “Once parties have made a collective bargaining contract, the enforcement of that contract should be left to the usual processes of law and not to the National Labor Relations Board.” H.R. Conf.Rep. No. 510, 80th Cong., 1st Sess. 42 (1947), quoted in Textile Workers of America v. Lincoln Mills, 353 U.S. 448, 452, 77 S.Ct. 912, 916, 1 L.Ed.2d 972 (1957).
Our decision on the propriety of the Board’s dismissal in this case is not intended in any way to reflect a predisposition as to the merits of the union’s § 301 suit or the possible defenses available to Sierra Glass. We hold only that Local 767 did not commit *105 an unfair labor practice by filing suit in a court of competent jurisdiction for the purpose of establishing a breach of contract and proving the extent to which it may have been injured thereby.
The petition to set aside the Board’s order is
DENIED.

. In pertinent part, the statute provides:
Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
29 U.S.C. § 185(a).

. Local 767 was recognized as the exclusive bargaining representative for all of the employers’ “glaziers and glass workers.” Section 24 of the agreement defined “general glazing” in the following broad terms:
Selecting, cutting, preparing, handling, installing or removal of all plate glass, X-ray shielding glass, window glass, and of all other types of glass, including structural glass, tempered glass doors, safety or protection glass, auto glass, all plastics or other similar materials when used in place of glass and when set or glazed with putty, mastic, cement, rubber or other materials used in place of same, driving the Employer’s truck as necessary.
The installation of the above materials when set in wood, stone, rubber (natural or syn *102 thetic), metal of all types, sash doors, skylights, louvers, sliding or fixed showcase, glass doors or partitions in the shop or on the job, whether temporary or permanent, on or for any building in the course of construction, repair or alteration.
The fabrication and installation of all extruded, rolled or fabricated metals, tubes, mullions, metal facing materials, mutins, facia, trim mouldings, porcelain panels, arch porcelain panels, skylights, show doors and relative materials, including those in any or all types of building related to store front and wall construction.
Door and window frame assemblers, such as patio sliding or fixed doors, vented or fixed windows, such items as shower doors, bath tub enclosures, storm sash, where the glass becomes an integral part of the finished product, it shall be considered glazier’s operation including the installation of same, except in the case of basic manufacturing.

. Included in the union’s efforts were: (1) a March 12, 1974 letter from the union’s attorney to Sierra Glass, threatening a law suit in the event of further non-compliance; (2) a May 17, 1974 written request for bargaining; and (3) three weeks of picketing at 645 in June 1974. Neither the charge nor the complaint alleged that any of these activities constituted an unfair labor practice. The charge mentioned only the institution of the § 301 suit, while the complaint alleged unlawful conduct on Local 767’s part only “[sjince on or about May 18, 1975.’’ Petitioner does not dispute the Board’s assertion that none of these actions, all of which were taken over six months prior to the filing of the charge, could have formed the basis for an unfair labor practice complaint. See 29 U.S.C. § 160(b).

. Also named as a defendant in the suit was Custom Auto Glass Distributors, a Nevada corporation not involved in the present proceedings.
The complaint contains three counts, all of which allege specific violations of the 1972 contract. Each count requests an accounting to determine the amount of arrearages incurred by reason of the alleged violations, damages, interest, costs and attorney fees. The district court, upon Sierra Glass’ motion, stayed the action pending resolution of the unfair labor practice charge.

. Much of the testimony before the ALJ concerned the questions of whether or not Sierra Glass had entered a collective bargaining agreement with Local 767 in 1968 and whether or not the terms of any such agreement had been applied to 645, as opposed to 230, employees. In his brief, petitioner contests the ALJ’s findings that a 1968 agreement, identical in terms to the 1972 agreement, had been executed and that the bargaining unit established therein included 645 employees. The courts, under normal circumstances, are required to sustain findings of fact supported by substantial evidence on the record as a whole. See Portland Willamette Co. v. NLRB, 534 F.2d 1331, 1334 (9th Cir. 1976); NLRB v. International Longshoremen’s Union, Local 50, 504 F.2d 1209, 1214 (9th Cir. 1974), cert. denied, 420 U.S. 973, 95 S.Ct. 1393, 43 L.Ed.2d 652 (1975); 29 U.S.C. § 160(f). However, based upon our understanding of the precise question before us and upon our resolution of that question, we need not reach petitioner’s claim that the ALJ’s findings do not enjoy the requisite support.