**CARPENTERS LOCAL 1273 OF the UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, Construction General Laborers Local 85, Lane-Coos-Curry-Douglas Counties Building and Construction Trades Council, Oregon State Council of the United Brotherhood of Carpenters and Joiners of America, Appellants,**

**v.**

**Willis A. HILL, doing business as Willis A. Hill, General Contractor, Appellees.**

No. 22452.

United States Court of Appeals
Ninth Circuit.

June 21, 1968.

Paul T. Bailey (argued), Stephen M. Malm, of Bailey, Swink & Haas, Portland, Ore., for appellants.

Lewis K. Scott (argued), James H. Clarke, John C. Wright, Jr., of McColloch, Dezendorf & Spears, Portland, Ore., for appellees.

Before HAMLEY and ELY, Circuit Judges, and VON DER HEYDT,* District Judge.

HAMLEY, Circuit Judge:

Willis A. Hill brought this action against the four named unions and union councils to recover damages in the amount of $18,182.69.[1] The alleged damages resulted from picketing by defendants which, according to plaintiff, constituted an unfair labor practice in violation of section 8(b) (4) (i) and (ii) (A) of the Labor Management Relations Act, as amended (Act).[2] Hill predicated district court jurisdiction on section 303(b) of the Act.[3]

After a trial to the court without a jury, a joint and several judgment was entered for Hill and against the four unions and councils in the amount of $11,500. Defendants appeal, arguing: (1) the findings of fact and conclusions of law fail to meet the requirements of Rule 52(a), Federal Rules of Civil Procedure, (2) there is no basis in the record for the finding and conclusion that the unions' picketing was unlawful, and (3) there is no basis in the record for the award of damages.

The trial court found that Hill is a sole proprietorship engaged as a general contractor in the construction industry affecting interstate commerce; defendants are labor organizations representing employees in that industry; commencing on January 18, 1965, defendants picketed plaintiff's construction site in Eugene, Oregon, where he was building a bookstore for the University of Oregon; they thereby induced and encouraged a strike of employees working on the job site; the picketing continued until April 9, 1965, when enjoined by the same district court in proceedings brought by the National Labor Relations Board; an object of such picketing was to require Hill to execute a contract designated "Oregon State Building and Construction Trades Council Articles of Agreement," and this agreement includes the following provision, contained in paragraph IX of the agreement:

"It is further agreed that no employee working under this Agreement need * * * cross any picket line or enter any premises at which there is a picket line authorized by the Council; or any other Building & Construction Trades Council or authorized by any Central Labor Council or handle, transport or work upon or with any product declared unfair by any of such Councils."

---

* The Honorable James A. von der Heydt, United States District Judge for the District of Alaska, sitting by designation.

1. Another named union council, the Oregon State Council of Laborers, was later dismissed.

2. 49 Stat. 452 (1935), as amended, 29 U.S.C. § 158(b) (4) (i) and (ii) (A) (1964).

3. 61 Stat. 158 (1947), as amended, 29 U.S.C. § 187(b) (1964).

On the basis of these findings, the trial court concluded that the agreement which defendants sought to have Hill sign violates section 8(e) of the Act, 29 U.S.C. § 158(e) (1964), and therefore defendants' picketing violated section 8(b) (4) (i) and (ii) (A) of the Act.

■ Notwithstanding defendants' contention to the contrary, we believe these findings and conclusions are sufficiently complete and detailed to present, adequately, the legal question of whether defendants engaged in an unfair labor practice under the circumstances described. With regard to this branch of the case there was sufficient compliance with Rule 52(a), Federal Rules of Civil Procedure, requiring findings of fact in all actions tried upon the facts without a jury.

Section 8(e) provides that it shall be an unfair labor practice for any labor organization and any employer to enter into any contract whereby such employer ceases or refrains, or agrees to cease or refrain, from handling, using, selling, transporting, or otherwise dealing in any of the products of any other employer, or cease doing business with any other person, and any contract or agreement containing such a provision shall be to such extent unenforcible and void. This provision is subject to three provisos, the first one being to the effect that nothing in the subsection shall apply to an agreement between a labor organization and an employer in the construction industry "relating to the contracting or subcontracting of work to be done at the site of the construction, alteration, painting, or repair of a building, structure, or other work."

Defendants argue that the quoted part of the agreement, read in conjunction with paragraph I of the agreement,[4] refers only to picket lines and the entering of premises where work is being done at a construction or job site, and that therefore this particular agreement falls under the construction industry exception to section 8(e). If this is a correct analysis, then picketing to obtain the agreement is not an unfair labor practice under section 8(b) (4) (i) and (ii) (A) of the Act. But if the proviso is not applicable here, then picketing to secure the agreement is prohibited by that section. See Construction, etc., Laborers Local 383, AFL-CIO v. N.L.R. B., 9 Cir., 323 F.2d 422, 425.

■ It will be noted that paragraph IX of the agreement refers to "any picket line * * * authorized by the Council." Despite the general coverage of the agreement, as described in paragraph I, we think "any picket line * * * authorized by the Council" is not limited to picket lines at construction job sites, nor is limited to work being done at a construction job site, as distinguished from the delivery of supplies and materials to such sites.[5]

In so concluding we have not overlooked the principle of contract construction, urged upon us by defendants, that where a contract is subject to interpretation in two ways and, by one of which it would be lawful and the other unlawful, the former will be adopted. See American Machine & Metals, Inc. v. DeBothezat Impeller Co., Inc., 2 Cir., 180 F.2d 342, 347.[6] We do not think paragraph IX is fairly open to the construction that the picket lines therein

4. Paragraph I of the agreement reads: "This Agreement shall apply to and cover all building and construction work performed by the Employer, Developer and/or Owner-Builder within the jurisdiction of any union affiliated with the Council and the contracting or subcontracting of work to be done at the site of the constructon, painting, repair or demolition of a building, structure or other work."

5. See Drivers, etc., Local Union No. 695 v. N.L.R.B., 124 U.S.App.D.C. 93, 361 F.2d 547, 552; N.L.R.B. v. International Brotherhood of Teamsters, etc., Local 294, 2 Cir., 342 F.2d 18, 21.

6. There are various ways of stating this principle. For example, in Newport News Shipbuilding & Drydock Co. v. United States, 4 Cir., 226 F.2d 137, 142–143, it was said that a construction ren-

referred to are only those which may be established at a construction job site or which, if established at a construction job site, relate only to work being done at such site as distinguished from the delivery of supplies and materials.

An unfair labor practice charge was filed against defendant Council involving the same picketing incident. A Board trial examiner found that the picketing violated section 8(b) (4) (i) and (ii) (A) of the Act. On review, the Board agreed. Lane-Coos-Curry-Douglas Counties Bldg. & Constr. Trades Council, 155 N.L.R.B. 1115. When the defendant Council refused to comply, the Board petitioned this court to enforce the order. We did so in Cause No. 20783, August 9, 1966, unreported.

This action by our court was subsequently cited in N.L.R.B. v. Bay Counties District Council of Carpenters, 9 Cir., 382 F.2d 593, 594, in upholding a Board ruling that picketing to secure a substantially similar contract provision violates section 8(b) (4) (i) and (ii) (A) of the Act. Defendants ask us to re-examine our decision in these two case, but we decline to do so.

The district court did not err in holding that, in view of the circumstances stated, the picketing in question constituted an unfair labor practice under section 8(b) (4) (i) and (ii) (A).

As before stated, Hill sought damages in the sum of $18,182.69. In support of this figure, he urged that, as the result of the picketing, he had been damaged in the following amounts: (1) wasted general overhead—$10,131.31, (2) wasted job overhead—$2,704.44, (3) lost profit—$4,296.94, and (4) lost "critical path" (special job analysis prepared by an engineering firm)—$1,050.00.

The only finding that the trial court made with regard to damages was that

"[a]s a direct and proximate result of the actions of defendants as above

described, plaintiff has been damaged in the amount of $11,500.00."

Thus we are left in the dark as to which of the several elements of damage claimed by Hill entered into the overall award, and how much was allowed under each element which entered into the award.

The testimony and trial briefs on the question of damages are of a highly detailed and technical nature. Among other things, defendants urged in the trial court, and here, that an accrual basis or method of accounting should have been used instead of a cash basis. Under the circumstances, we conclude that the findings as to damages do not comply with the requirements of Rule 52(a) and are inadequate for purposes of review in this court. See Hatahley v. United States, 351 U.S. 173, 182, 76 S.Ct. 745, 100 L.Ed. 1065; Dwyer v. Socony-Vacuum Oil Co., 2 Cir., 276 F.2d 653, 654.

The judgment is affirmed as to the determination of liability.

On the question of damages, the cause is remanded for the limited purpose of entering supplemental findings of fact on the question of damages which shall at least state the elements and the method of computation of damages allowed and the amount awarded for each allowed element. The district court may, in its discretion, take additional testimony on the matter of damages and may find the damages to be more or less than the $11,500.00 awarded in the judgment under review. In the event the damages thus awarded vary from the original $11,500.00 figure, an amended judgment shall be entered.

Following entry of the supplemental findings and amended judgment, if any, the cause shall be retransferred to this court, together with a supplemental transcript. The parties shall, within twenty days thereafter, file simultaneous supplemental briefs on the question of damages and the matter will be re-

dering a contract of doubtful validity is to be avoided where another valid and

reasonable construction can be placed upon it.

viewed on the present record as so supplemented, without further oral argument. Should the supplemental findings and an amended judgment award damages less than the original $11,500.00 figure, plaintiff may take a cross-appeal, which will be consolidated with this appeal and heard on the present and supplemented record as described above.