**PLUMBERS & FITTERS, LOCAL 761, Appellant,**

v.

**MATT J. ZAICH CONSTRUCTION CO., Appellee.**

**No. 22566.**

United States Court of Appeals Ninth Circuit.

Dec. 5, 1969.

Albert Brundage (argued), of Brundage & Hackler, Julius Reich, Paul Crost, Los Angeles, Cal., for appellant.

Darrell P. McCrory (argued), of Monteleone & McCrory, Los Angeles, Cal., for appellee.

Before CHAMBERS, MERRILL and ELY, Circuit Judges.

ELY, Circuit Judge.

Appellee Zaich Construction, plaintiff below, sued the appellant union (Plumbers) under section 303(a) of the Taft-Hartley Act, 29 U.S.C. § 187(a). The action was based on alleged unfair labor practices in the form of unlawful picketing. The District Court's judgment

awarded money damages, including attorneys' fees, and Plumbers appeals.

Zaich Construction Co. and Zaich Co. are two separate corporations owned by one Matt J. Zaich. Both are engaged in the construction business and specialize in "underground engineering." Zaich Construction, through its membership in Associated General Contractors, an employers' trade association, had a collective bargaining agreement with the Laborers' Union (Laborers). Zaich Co. was a member of the Underground Engineering Contractors Assn., through which it had agreements with both Laborers and appellant Plumbers. Zaich Construction's contract with Laborers contained no arbitration clause, but Zaich Co.'s contracts with both unions provided for arbitration of all disputes by the National Joint Board for the Settlement of Jurisdictional Disputes in the Construction Industry (NJB).

In July 1962 Zaich Construction commenced work involving the laying of pipe for a particular water project. Early in the next month, August, Plumbers sought a contract with Zaich Construction under which Plumbers' members would be employed on the job, but the company refused to sign an agreement. Although Plumbers then picketed the job site, it failed to achieve its objective through that means. Plumbers then submitted the dispute to the NJB, attempting to invoke that body's jurisdiction under Plumbers' contract with Zaich Co.

NJB notified Zaich Construction and Laborers that the dispute had been submitted for its determination. Zaich Construction and Laborers both notified the NJB that they would not be bound by arbitration because their contract did not provide for it. The arbitrator proceeded to a determination that Plumbers was entitled to the job, but Zaich Construction refused to comply with the order. Plumbers picketed the job site in November 1962, and a work stoppage occurred. In December following, the Regional Director of the NLRB petitioned the District Court for an injunction against the picketing, which was granted. See 29 U.S.C. § 160(l). The NLRB then conducted a hearing under § 10(k), 29 U.S.C. § 160(k) and determined, in August 1963, that Laborers, not Plumbers, was the proper union whose members should be employed on the job.

Plumbers respected the Board's determination that it had no right to a contract on the job, but in November 1963 Zaich Construction filed its suit, basing its claim on the picketing that had occurred before the NLRB proceedings. In this appeal, Plumbers contends (1) that there could be no violation of § 8(b) (4) (D) absent its refusal to obey an order of the NLRB, (2) that the District Court should have pierced the corporate veils and treated Zaich Co. and Zaich Construction as one employer, and (3) that attorneys' fees were improperly awarded. We discuss the contentions seriatim.

(1) *Need for prior NLRB determination.*

■ As before stated, appellee brought its action under section 303 of the Taft-Hartley Act, which provides relief by way of money damages for anyone injured by an unfair labor practice described in section 8(b) (4). Section 8(b) (4) describes four purposes for which a union cannot strike or picket. Jurisdictional disputes are included in the description in section 8(b) (4) (D), with the result that money damages are recoverable by an employer or other person who is injured by the activities of a union in a jurisdictional dispute.

Plumbers argues that the money damages authorized under section 303 cannot be recovered unless the NLRB has first determined that a union's conduct constitutes an unfair labor practice under section 8(b) (4) (D) and the union has then violated the Board's order. This argument is based on the last sentence of section 10(k), which reads:

"Upon compliance by the parties to the dispute with the decision of the Board or upon such voluntary adjust-

ment of the dispute, such charge shall be dismissed."

The contention is that there can be no unfair labor practice under section 8(b)(4)(D) if the parties comply with the decision of the Board. This argument would equate the "charge" referred to in section 10(k) with any action brought by a private party, although the literal language of the statute refers only to charges brought before the Board.

This specific contention was rejected by the Supreme Court in International Longshoremen's & Warehousemen's Union v. Juneau Spruce Corp., 342 U.S. 237, 72 S.Ct. 235, 96 L.Ed. 275 (1952). The Court held that actions under section 303 were not dependent on prior administrative determinations, despite the statutory scheme which is provided for the determination of jurisdictional disputes. The Court noted that section 303 contained no provision indicating a need for administrative determination and that the special hearing provided for in section 10(k) simply constituted a means of settling the underlying dispute if the parties were unable to do so voluntarily. Under this rationale, the section 303 remedy remains separate and independent of the section 10(k) & (*l*) provisions for settlement. The policy underlying this decision is crystal clear: Unions should not be permitted to injure employers as they pursue their inter-union squabbles. If possible, the dispute should be arbitrated; if the outside union has no contract requiring arbitration, then it should petition the Board in a representational action under section 8(a)(3).

Appellant contends that *Juneau Spruce* was overruled by Congress when section 303 was amended in 1959. At the time of the *Juneau Spruce* decision, each of the unfair labor practices of section 8(b)(4) was spelled out in section 303 for purposes of money damages. In 1959 section 303 was amended so that the unfair practices covered were incorporated into section 303 by reference to section 8(b)(4). Plumbers argues that this change was designed to make it clear that the entire statutory machinery for settlement of jurisdictional disputes under 8(b)(4) was to be incorporated into section 303 along with the substantive definition.

This argument has been presented and rejected in at least one case since the amendment of the statute. In Public Constructors, Inc. v. Electrical Workers, Local 400, 55 CCH Lab.Cas. ¶ 11,883 (D.N.J.1967), an employer brought an action under section 303 for damages incurred as a result of a jurisdictional dispute. The unions argued that the 1959 statutory amendment undermined the decision in *Juneau Spruce* and established that a prior determination by the NLRB was a prerequisite to a lawsuit under section 303. The New Jersey District Court answered,

> "We compliment the defendants on the ingenuity of their argument; however, we reject it. In arriving at our decision, we find it most significant that there is nothing in the legislative history accompanying the 1959 amendment which supports defendants' contention. If Congress had intended to legislatively overrule the Juneau case, we are confident that they would have so indicated. In the face of a silent record, we will not attribute to Congress an intent to reinterpret section 303 by such subtle means."

*Id.* at 18,894.

■ We have likewise searched the legislative history of the 1959 amendment in vain for any indication that Congress intended anything beyond a "scrivener's preference for abbreviated language." *See id.* at 18,894; 1959 U.S.Code Congressional and Administrative News, p. 2138 *et seq.* Therefore, we hold that it was not necessary that the union must have violated an NLRB order before the employer was entitled to institute, and successfully maintain, its suit for damages under section 303.

(2) *Piercing the corporate veil.*

■ Appellant next contends that Zaich Construction Co. was the alter ego

of Matt J. Zaich and Zaich Co. and that Zaich Construction should thus be bound by the arbitration clauses in the contracts that Zaich Co. had with both unions.[1] We reject Plumbers' argument principally because we are not convinced that piercing the corporate veil would be appropriate for the purpose of enforcing an arbitration provision in one corporation's contract against the second corporation. Moreover, in the circumstances of this case, we are not prepared to overturn the District Court's finding that neither corporation was the alter ego of the other.

■ The threshold question of whether piercing would be proper for the purpose intended is rarely articulated with any clarity. In principle, however, the disregarding of the corporate form of business should not rest on the manner of doing business in general but should rest on the effect that the manner of doing business has on the particular transaction involved. *See, e.g.,* Oppenheim, The Close Corporation in California—Necessity of Separate Treatment, 12 Hastings L.J. 227, 231 (1961) *and authorities therein cited and discussed.* Generally speaking, the doctrine is designed to prevent a person from doing injury and then escaping responsibility by hiding behind a corporate shield.

Piercing the corporate veils here would require the determination that the separate corporations were designed to avoid an obligation to assign work or an obligation to arbitrate the jurisdictional dispute. Rather than proving an intent on the part of the employer to avoid such obligations, Plumbers proved that the corporate structure was designed for tax purposes. The contractual relationships were thus an offshoot of the employers' pre-determined corporate structure. At least to some extent, the contracts were dictated by the fact that Zaich Construction was ineligible for membership in the Underground Engineering Contractors' Association.

■ The District Court found as a fact that the two corporations were separate entities. We are not compelled on this record to disturb this finding, especially in light of Plumbers' own conduct. Plumbers was fully aware of the corporate structure and was, of course, at liberty to bargain and organize within the Zaich structure as it stood. There was no evidence of misrepresentation by appellee of or acts on its part which might have justified application of any principle of estoppel against it. Plumbers apparently did not seek either NLRB certification as the bargaining representative of appellee's employees nor did it seek judicial compulsion of arbitration. After this dispute arose, Plumbers did seek to negotiate a contract with appellee, apparently recognizing the separate character of the two corporations. All of these factors, when considered with the deference which should be accorded the determination of the District Court and a similar finding by the NLRB, convince us that the conclusion of the District Court on the point under discussion was not clearly erroneous.

---

1. In its brief, Plumbers makes the assertion, not challenged by appellee, that "This object [picketing to compel compliance with an arbitration award] is a legitimate one, and does not violate the Act. See Syracuse Supply Co., 139 N.L.R.B. 778, 780–81 (1962) ; Pacific Maritime Ass'n, 137 N.L.R.B. 119, 126 (1962)." In light of our disposition of the threshold question of piercing the corporate veil, it is unnecessary that we here express our analysis of the assertion. Interested readers are referred to Local 1976, United Brotherhood of Carpenters and Joiners of America v. NLRB, 357 U.S. 93, 78 S.Ct. 1011, 2 L.Ed.2d 1186 (1958) ; NLRB v. Longshoremen, Local 1291, 345 F.2d 4 (3d Cir. 1965) ; NLRB v. Operating Engineers, Local 825, 326 F.2d 213 (3d Cir. 1964) ; Bernstein, Nudging and Shoving All Parties to a Jurisdictional Dispute Into Arbitration, 78 Harv.L.Rev. 784 (1965) ; Bond, The Concurence Conundrum: The Overlapping Jurisdiction of Arbitration and the National Labor Relations Board, 42 S.Cal. L.Rev. 4 (1969).

### (3) *Attorneys' Fees.*

The District Court awarded damages to Zaich Construction in the sum of $19,443.96. The judgment is affirmed as to $15,126.75, the sum awarded as general damages.

The balance of the judgment, some $4,317.21, was attributed to "Legal fees for injunction matters." Plumbers contests the award of legal fees on the grounds that the unfair labor practice charges were filed by an employers' association, that the section 10(*l*) injunction was actually secured by the Government, and that the section 10(k) proceedings before the Board do not give rise to recoverable attorneys' fees. Finally, Plumbers contends that since the proof did not show how much of the total attorneys' fees were attributable to each segment of the controversy, then none of the fees should be allowed as damages.

■ We agree with Plumbers that when it is possible to prove damages by definite calculation, they should be proved in detail. Christiansen v. Mechanical Contractors Bid Depository, 230 F.Supp. 186, 194 (D.Utah 1964). *Cf.* Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 562, 51 S. Ct. 248, 75 L.Ed. 544 (1932). We do not agree, however, that failure to particularize the elements of damages should lead to entire disallowance of the claim.

■ Our court has held that when damages are claimed for several distinct elements and the trial court has made a lump sum award, the case should be remanded for supplemental findings of fact on the issue of damages. Carpenters Local 1273 of United Brotherhood of Carpenters and Joiners of America v. Hill, 398 F.2d 360 (9th Cir. 1968). In that case, the lump sum was less than the total of each of the claimed elements of damages so that we had no adequate basis for review as to each element. Here, the award was equal to that claimed, but there is nothing which reveals a specified amount attributable to each element.

Accordingly, we remand to the District Court for supplemental findings of fact on the issue of damages. The parties may be able to reach a stipulated breakdown of the claimed attorneys' fees. On the other hand, an evidentiary hearing may be required. In any event, we cannot resolve the attorneys' fee problem without more detailed findings of fact as to the specific elements of the attorneys' fees. If the District Court again awards attorneys' fees, and if the amount of the award varies from the amount specified in the judgment now before us, an amended judgment must, of course, be entered.

Following entry of the supplemental findings and amended judgment, if any, the cause shall be transferred to this court, together with a supplemental transcript. The parties shall, within twenty days thereafter, file simultaneous supplemental briefs on the question of attorneys' fees and the matter will be reviewed on the present record as so supplemented, without further oral argument. Should an amended judgment award damages less than the original $4,317.21 figure, the present appellee may take a cross-appeal, which will be consolidated with this appeal and heard on the present and supplemented record as described above. *Cf.* Carpenters Local 1273 of United Brotherhood of Carpenters and Joiners of America v. Hill, 398 F.2d 360 (9th Cir. 1968).

Affirmed in part; Remanded for limited proceedings.