## INTERNATIONAL LONGSHOREMEN'S & WARE-HOUSEMEN'S UNION ET AL. *v.* JUNEAU SPRUCE CORP.

No. 280. Argued December 6, 1951.—Decided January 7, 1952.

*Richard Gladstein* and *Allan Brotsky* argued the cause and filed a brief for petitioners.

*Manley B. Strayer* argued the cause for respondent. With him on the brief was *Charles A. Hart.*

Solicitor General Perlman, David P. Findling, Mozart G. Ratner and Dominick L. Manoli filed a memorandum for the National Labor Relations Board, as amicus curiae.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

In the spring of 1947, respondent purchased certain properties for the manufacture of lumber, including a sawmill at Juneau, Alaska, and commenced operations. Shortly thereafter, the International Woodworkers of America requested negotiation of a contract with respondent, claiming representation of a majority of respondent's employees. A bargaining agreement was signed with that union on November 3, 1947.

Respondent decided to ship its lumber to ports in Canada and the United States and acquired barges for that purpose. Respondent's policy was to utilize its own employees to load its barges. In October, 1947, petitioner, Local 16 of the International Longshoremen's and Warehousemen's Union, asked that its men be allowed to load respondent's barges. This request was denied. The request was repeated the following spring and was again denied. Petitioner Local established a picket line at respondent's plant on April 10, 1948. Most of respondent's employees refused to cross the picket line and the mill shut down. The mill reopened on July 19, 1948, but picketing continued. Petitioner International notified its Canadian locals that respondent's products were unfair. Respondent was unable to unload its barges in Canada or Puget Sound due to the refusal of longshoremen to work respondent's vessels. On October 11, 1948, the mill again closed down due to lack of storage facilities to hold the accumulating lumber. Picketing was not discontinued until May 9, 1949.

On August 3, 1948, respondent filed a charge against Local 16 alleging violations of § 8 (b) (4) (D) of the

National Labor Relations Act, as amended by the Labor Management Relations Act, 1947,[1] 61 Stat. 136, 141, 29 U. S. C. (Supp. II) §§ 151, 158, on the ground that the Local attempted to induce assignment of particular work to its members. Following a hearing pursuant to § 10 (k) of the Act, the National Labor Relations Board determined on April 1, 1949, that longshoremen represented by Local 16 were not entitled to the barge-loading work. 82 N. L. R. B. 650. In the meantime, respondent had filed suit for damages against both the Local and the International under § 303 (a) (4) of the Labor Management Relations Act.[2] Respondent asked, pursuant to an

---

[1] Section 8 (b) (4) (D) provides:

"(b) It shall be an unfair labor practice for a labor organization or its agents—

. . . . .

"(4) to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is: . . . (D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work: *Provided*, That nothing contained in this subsection (b) shall be construed to make unlawful a refusal by any person to enter upon the premises of any employer (other than his own employer), if the employees of such employer are engaged in a strike ratified or approved by a representative of such employees whom such employer is required to recognize under this Act; . . . ."

[2] Section 303 (a) (4) provides:

"(a) It shall be unlawful, for the purposes of this section only, in an industry or activity affecting commerce, for any labor organization to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or other-

amended complaint, for damages from April 10, 1948, to April 27, 1949. After trial before a jury, respondent was awarded.a judgment of $750,000 plus costs. The Court of Appeals for the Ninth Circuit affirmed. 189 F. 2d 177. The case is here on certiorari. 342 U. S. 857.

*First.* This suit was brought in the District Court for the Territory of Alaska. And the question which lies at the threshold of the case is whether that court is a "district court of the United States" within the meaning of § 303 (b) of the Act.[3] That court has the jurisdiction of district courts of the United States by the law which created it. 48 U. S. C. § 101. Yet vesting it with that jurisdiction does not necessarily make it a district court for all the varied functions of the Judicial Code. See *Reynolds* v. *United States,* 98 U. S. 145, 154; *McAllister* v. *United States,* 141 U. S. 174; *United States* v. *Bur-*

wise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is—

"(4) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class unless such employer is failing to conform to an order or certification of the National Labor Relations Board determining the bargaining representative for employees performing such work. Nothing contained in this subsection shall be construed to make unlawful a refusal by any person to enter upon the premises of any employer (other than his own employer), if the employees of such employer are engaged in a strike ratified or approved by a representative of such employees whom such employer is required to recognize under the National Labor Relations Act."

[3] Section 303 (b) provides:

"Whoever shall be injured in his business or property by reason [of] any violation of subsection (a) may sue therefor in any district court of the United States subject to the limitations and provisions of section 301 hereof without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit."

*roughs,* 289 U. S. 159, 163; *Mookini* v. *United States,* 303 U. S. 201, 205. The words "district court of the United States" commonly describe constitutional courts created under Article III of the Constitution, not the legislative courts which have long been the courts of the Territories.[4] See *Mookini* v. *United States, supra,* p. 205. But we think that in the context of this legislation they are used to describe courts which exercise the jurisdiction of district courts. The jurisdiction conferred by § 303 (b) [5] is made "subject to the limitations and provisions of section 301." Section 301 lifts the limitations governing district courts as respects the amount in controversy and the citizenship of the parties; it defines the capacity of labor unions to sue or be sued; it restricts the enforceability of a money judgment against a labor union to its assets; and it specifies the jurisdiction of a district court over a union and defines the service of process.[6] Congress was here concerned with reshaping labor-management legal relations;

---

[4] The new Judicial Code creates judicial districts for the District of Columbia, 28 U. S. C. § 88; for Hawaii, 28 U. S. C. § 91; and for Puerto Rico, 28 U. S. C. § 119; but none for the Canal Zone, the Virgin Islands, or for Alaska.

[5] See note 3, *supra.*

[6] Section 301 provides:

"(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

"(b) Any labor organization which represents employees in an industry affecting commerce as defined in this Act and any employer whose activities affect commerce as defined in this Act shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and

and it was taking precise steps to declared and announced objectives. One of those was the elimination of obstacles to suits in the federal courts. It revised the jurisdictional requirements for suits in the district courts, requirements as applicable to the trial court as to any court which in the technical sense is a district court of the United States. The Act extends in its full sweep to Alaska as well as to the states and the other territories.[7] The trial court is indeed the only court in Alaska to which recourse could be had. Even if it were not a "district court" within the meaning of § 303 (b), it plainly would be "any other court" for purposes of that section. As such other court it might or might not have jurisdiction over this dispute depending on aspects of territorial law which we have not examined. But since Congress lifted the restrictive requirements which might preclude suit in courts having the district courts' jurisdiction, we think it is more consonant with the uniform, national policy of the Act to hold that those restrictions were lifted as respects all courts

against its assets, and shall not be enforceable against any individual member or his assets.

"(c) For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members.

"(d) The service of summons, subpena, or other legal process of any court of the United States upon an officer or agent of a labor organization, in his capacity as such, shall constitute service upon the labor organization.

"(e) For the purposes of this section, in determining whether any person is acting as an 'agent' of another person so as to make such other person responsible for his acts, the question of whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling."

[7] Section 2 (6) defines commerce to include trade, etc., between a state and a territory or within any territory.

upon which the jurisdiction of a district court has been conferred. That reading of the Act does not, to be sure, take the words "district court of the United States" in their historic, technical sense. But literalness is no sure touchstone of legislative purpose. The purpose here is more closely approximated, we believe, by giving the historic phrase a looser, more liberal meaning in the special context of this legislation.

*Second.* The main contention of petitioners in the case is that § 303 (a) (4) read in light of § 8 (b) (4) (D) [8] renders illegal only such picketing as takes place after and in the face of a determination by the Board that the acts complained of were unfair labor practices. If that conclusion is warranted, there must be a reversal here since the damages reflected in the present judgment for the most part accrued prior to the decision of the Board, under § 10 (k) of the Act,[9] that petitioners had committed an unfair labor practice within the meaning of § 8 (b) (4) (D):

Section 8 (b) (4) (D) and § 303 (a) (4) are substantially identical in the conduct condemned. Section 8 (b) (4) (D) gives rise to an administrative finding; [10] § 303

---

[8] See notes 1 and 2, *supra.*

[9] Section 10 (k) provides:

"Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4)(D) of section 8 (b), the Board is empowered and directed to hear and determine the dispute out of which such unfair labor practice shall have arisen, unless, within ten days after notice that such charge has been filed, the parties to such dispute submit to the Board satisfactory evidence that they have adjusted, or agreed upon methods for the voluntary adjustment of, the dispute. Upon compliance by the parties to the dispute with the decision of the Board or upon such voluntary adjustment of the dispute, such charge shall be dismissed."

[10] The administrative finding under § 10 (k) can be the basis for a cease and desist order under § 10 (b) and (c). A cease and desist order was issued in the present dispute. 90 N. L. R. B. 1753.

(a) (4), to a judgment for damages. The fact that the two sections have an identity of language and yet specify two different remedies is strong confirmation of our conclusion that the remedies provided were to be independent of each other. Certainly there is nothing in the language of § 303 (a) (4) which makes its remedy dependent on any prior administrative determination that an unfair labor practice has been committed. Rather, the opposite seems to be true. For the jurisdictional disputes proscribed by § 303 (a) (4) are rendered unlawful "for the purposes of this section only," thus setting apart for private redress, acts which might also be subjected to the administrative process. The fact that the Board must first attempt to resolve the dispute by means of a § 10 (k) determination before it can move under § 10 (b) and (c) for a cease and desist order [11] is only a limitation on administrative power, as is the provision in § 10 (k) that upon compliance "with the decision of the Board or upon such voluntary adjustment of the dispute," the charge shall be dismissed. These provisions, limiting and curtailing the administrative power, find no counterpart in the provision for private redress contained in § 303 (a) (4). Section 303 (a) (4) as explained by Senator Taft, its author, "retains simply a right of suit for damages against any labor organization which undertakes a secondary boycott or a jurisdictional strike." [12]

The right to sue in the courts is clear, provided the pressure on the employer falls in the prescribed category which, so far as material here, is forcing or requiring him to assign particular work "to employees in a particular labor organization" rather than to employees "in another labor organization" or in another "class." Here the juris-

[11] *Juneau Spruce Corp.*, 82 N. L. R. B. 650, 655.

[12] 93 Cong. Rec. 4858; 2 Legislative History of the Labor Management Relations Act, 1947, p. 1371.

dictional row was between the outside union and the inside union. The fact that the union of mill employees temporarily acceded to the claim of the outside group did not withdraw the dispute from the category of jurisdictional disputes condemned by § 303 (a)(4). Petitioners, representing one union and employing outside labor, were trying to get the work which another union, employing mill labor, had. That competition for work at the expense of employers has been condemned by the Act. Whether that condemnation was wise or unwise is not our concern. It represents national policy which has both administrative and conventional legal sanctions.

*Affirmed.*