**CONSTRUCTION EMPLOYERS' ASSOCIATION OF TEXAS et al., Plaintiffs-Appellants,**

v.

**INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 450, AFL-CIO, Defendant-Appellee.**

**No. 28387.**

United States Court of Appeals, Fifth Circuit.

June 4, 1970.

V. R. Burch, Jr., Houston, Tex., for plaintiffs-appellants.

W. A. Combs, William N. Wheat, Houston, Tex., for defendant-appellee.

Before THORNBERRY, DYER and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Construction Employers' Association of Texas (Association) appeals from the dismissal of its suit under section 303 of the Labor Management Relations Act [1] for damages sustained because of picketing by the International Union of Operating Engineers, Local 450, AFL-CIO (Operating Engineers) in violation of section 8(b) (4) (D) of the National Labor Relations Act.[2] Because we disagree with the district court's holding that the picketing did not constitute an unfair labor practice within the meaning of section 8(b) (4) (D), we reverse. 301 F.Supp. 49.

Ten companies which do maintenance and construction work for the Dow Chemical Company (Dow) comprise the members of the Association. One contractor not a member of the Association and the Dow Chemical Company joined with the Association as plaintiffs in the court below. The Association represents its members in bargaining with various unions. At all times relevant to this case the Association and the Operating Engineers have been parties to a collective bargaining agreement.

In March 1966 Ashley-Hickman Maintenance and Engineering Company (Ashley-Hickman) began maintenance and repair work for Dow at one of Dow's plants in Freeport, Texas. This work required the use of a permanently installed overhead crane which could be operated from a cab or from the ground by a pendant control. Ashley-Hickman directed its employees who were to do the maintenance work to operate the crane from the ground using the pendant control. These employees were members of Millwrights Local Union No. 2232 (Millwrights), which had a collective bargaining agreement with Ashley-Hickman. While oper-

1. 29 U.S.C.A. § 187.

2. 29 U.S.C.A. § 158(b) (4) (D).

ation of the crane was not provided for in the collective bargaining agreement, the practice for seven similar jobs undertaken in previous years by Ashley-Hickman for Dow, and the general practice in this area, were that the Millwrights operated the crane as a tool of this trade. Moreover, the court below found that the Millwrights claimed the work.

Although the Operating Engineers had no collective bargaining agreement with Ashley-Hickman, on numerous occasions before and after work began, the Operating Engineers requested that the operation of the crane be assigned to them. An Operating Engineer could only operate the crane from the cab with the help of a Millwright on the ground to direct him. The Millwright, however, could operate the crane from the ground by himself, using the pendant control. During the beginning and ending of the maintenance work the crane was used about seventy-five percent of the time, but while the actual maintenance work was being done the crane was used not more than five to ten percent of the time. During the time that the crane was not in use, an Operating Engineer, merely seated in the crane cab, would have no work on the job site.

On March 23, 1966 after Ashley-Hickman had refused to hire an Operating Engineer to operate the crane, the Operating Engineers established a picket line at a Dow construction gate then being used by employees of Ashley-Hickman and of some of the Association's members. The District Court found that a purpose of the picketing was to force Ashley-Hickman to reassign operation of the crane from a Millwright to an Operating Engineer. Union members who used the gate honored the picket line and did not report for work. Millwrights who were working at the Ashley-Hickman worksite were in the plant before the picket line went up but left after they heard of the picketing. The picketing continued until the next day and affected about 1300 employees. This suit for damages under section 303 followed, which the district court dismissed because it determined that there was no genuine jurisdictional dispute.

Since one reason for the Operating Engineers picketing was found to be to force Ashley-Hickman to reassign work held by the Millwrights to the Operating Engineers, such picketing is clearly proscribed by the words of section 8(b)(4)(D), which makes it an unfair labor practice for a union to picket or threaten to picket where an object is *inter alia:* "forcing or requiring any employer to assign particular work to employees in a particular labor organization * * * rather than to employees in another labor organization * * *." Section 303 confers a course of action for damages arising from such an unfair labor practice.

■ The rationale of the section 8(b)(4)(D) prohibition of jurisdictional strikes is that industrial peace should not be subject to disruption by inter-union squabbles over work assignments. Interunion work assignment disputes are primarily a problem for the unions to settle between themselves and should not be allowed to injure an innocent employer. International Longshoremen's and Warehousemen's Union v. Juneau Spruce Corp., 342 U.S. 237, 245, 72 S.Ct. 235, 240, 96 L.Ed. 275 (1952); Plumbers & Fitters Local 761 v. Matt J. Zaich Construction Co., 418 F.2d 1054, 1057 (9th Cir. 1969). Moreover, section 8(b)(4)(D) as a practical matter protects the workingmen of the in-union, who have an arguably valid claim to the assigned work, from unjustified interferences by another union which is antipathetic or hostile to their interests.

The Operating Engineers strenuously contend that the evils which the Act sought to prevent were not present in the instant case and, thus, it should not be applied to them. This is not a case, they argue, where the in-union either claimed or wanted the assigned work. There being no opposition by the Millwrights to the proposed assignment of the work to the Operating Engineers, the real dis-

pute was between the Operating Engineers and Ashley-Hickman. The conclusion to this reasoning is obvious: The strike resulted from an ordinary, everyday, management-labor economic dispute and was not within the scope of section 8(b) (4) (D). The facts, however, are otherwise. The trial judge found that the Millwrights claimed the work. This finding is amply supported in the record and is far from being clearly erroneous. The Millwrights had vigorously complained to Ashley-Hickman when iron workers were allowed to operate the crane on a prior occasion. The Millwrights' business representative testified that the Millwrights claimed the work. Prior to the picketing, he told officials of both the Operating Engineers and Ashley-Hickman that the Millwrights claimed the work. The Millwrights' claim to the assigned work was more than arguably valid. There is undisputed evidence that the area practice and the practice between the parties for seven similar previous jobs was that the Millwrights operated the crane as a tool of the trade.

▪ The Operating Engineers, however, even conceding that the Millwrights claimed the work, reason that a *"mere"* claim is not sufficient to bring into force a statute which is on its face applicable. This is semantic sophistry. Jurisdictional strikes have been precisely condemned by Congress, and "the damage suit provisions which Congress inserted in the law * * * should not be given a narrow interpretation." International Brotherhood of Carpenters and Joiners of America v. C. J. Montag & Sons, Inc., 335 F.2d 216, 219 (9th Cir. 1964). The point that the Millwrights honored the picket line does not bolster their contention that there was no real inter-union dispute in the eyes of the law.

In International Longshoremen's and Warehousemen's Union v. Juneau Spruce Corp., supra, the Supreme Court dealt with a problem similar to the instant case. When the employer who manufactured lumber decided to ship the lumber himself using barges, he assigned the loading of the barges to the employees represented by the in-union. A demand by the Longshoremen's Union that its members be given the loading work was rejected and the longshoremen picketed. The picket line was honored for three months by the in-union. Nonetheless the Supreme Court affirmed a damage award against the longshoremen stating:

"The right to sue in the courts is clear, provided the pressure on the employer falls in the prescribed category which, so far as material here, is forcing or requiring him to assign particular work 'to employees in a particular labor organization' rather than to employees 'in another labor organization' or in another 'class.' Here the jurisdictional row was between the outside union and the inside union. The fact that the union of mill employees temporarily acceded to the claim of the outside group did not withdraw the dispute from the category of jurisdictional disputes condemned by § 303(a) (4); Petitioners, representing one union and employing outside labor, were trying to get the work which another union, employing mill labor, had. That competition for work at the expense of employers has been condemned by the Act. 342 U.S. at 244–245, 72 S.Ct. at 239–240."

Furthermore, it has long been recognized that a jurisdictional dispute does not necessitate bloody combat between the two unions claiming the same work. In the instant case, the Millwrights did not stand to lose any wages if an Engineer was allowed to operate the crane. Operation of the crane was incidental to the performance of the maintenance work. Counsel for the Operating Engineers agreed during oral argument that Ashley-Hickman's compliance with their demands could have resulted in a situation where a Millwright would continue to operate the crane from the ground while the Operating Engineer sat idle in the seat in the cab. In International Brotherhood of Carpenters, etc. v. C. J.

Montag & Sons, Inc., supra, the Ninth Circuit stated:

> The fact that one union has the jobs and holds on to them in a polite, non-belligerent manner while the other union uses the forbidden tactics in an effort to get them, or get some of them, does not mean that what Congress regarded as the evils of a jurisdictional dispute are not present. And the fact that the union which has the job is not unwilling that the other union should come in and do some of the work and get paid for doing it, if the first union will still continue to get paid for the work, does not remove the situation from the category of jurisdictional disputes. 335 F.2d at 221.

*See* NLRB v. Local 1291, International Longshoremen's Ass'n, 368 F.2d 107, 110 (3rd Cir. 1966).

The Operating Engineers' reliance on Penello for and on Behalf of NLRB v. Local Union No. 59, Sheet Metal Workers, etc., 195 F.Supp. 458 (D.Del.1961), is misplaced. *Penello* expressly noted that there was no in-union or other group of workers claiming the work. The essence of the dispute in that case was not whether the Sheet Metal Workers would do the work but whether they would be given travel pay. The employer would not have been bound by a 10(k) proceeding, thus there was no jurisdictional dispute. 195 F.Supp. at 462.

■ The employer in this case assigned the work to the Millwrights on valid nondiscriminatory grounds. The Millwrights performed the work and claimed the right to continue performance of the work. The area and party practices were that the Millwrights were entitled to operate the crane. On these facts, section 8(b) (4) (D) made the picketing by the Operating Engineers an unfair labor practice for which damages are recoverable.

A recent decision of the Ninth Circuit, Plumbers & Fitters Local 761 v. Matt J. Zaich Construction Co., supra, fully supports the result reached in this case. In *Zaich* the out-union picketed after the employer refused to abide by an arbitration award assigning it the disputed work. On the force of the favorable arbitration award and the employer's refusal to replace the in-union, the out-union picketed the job site. The picketing was halted by the NLRB pursuant to 29 U.S.C.A. § 160(*l*). In a subsequent 10(k) proceeding, 29 U.S.C.A. § 160(k), the Board found that the employer was not bound by the arbitration agreement and that the in-union was entitled to the work. The employer sued the out-union for damages under section 303, and the trial court's finding of a section 8(b) (4) (D) violation and award of damages was affirmed by the Ninth Circuit. The court found that in a work assignment dispute the self-help remedy of coercive picketing is not available to the out-union. The permissible alternatives were made quite clear: "If possible the dispute should be arbitrated; if the outside union has no contract requiring arbitration, then it should petition the Board in a representational action under section 8(a) (3)." 418 F.2d at 1057.

The legal alternatives available to the Operating Engineers were likewise clear and picketing was not among them. The findings of fact of the trial court fully support a conclusion that the Operating Engineers committed an unfair labor practice. The case is therefore remanded to the district court for a determination of damages.

Reversed and remanded.