**LAKELAND CONSTRUCTION CO., INC., Plaintiff,**

v.

**OPERATIVE PLASTERERS & CEMENT MASONS INTERNATIONAL ASSOCIATION, LOCAL NO. 362, Defendant.**

**No. 79 C 3101.**

United States District Court, N. D. Illinois, E. D.

March 11, 1980.

---

George E. Riseborough, A. Lynn Himes, Waukegan, Ill., and Gerard Smetana, Chicago, Ill., for plaintiff.

Hugh B. Arnold, Marc M. Pekay, Arnold & Kadjan, Chicago, Ill. (of counsel), for defendant.

## DECISION ON MOTION TO DISMISS

McMILLEN, District Judge.

The Corrected First Amended Complaint (hereinafter referred to as the complaint) seeks relief pursuant to §§ 301 and 303 of the Labor Management Relations Act of 1947, 29 U.S.C. §§ 185, 187. Defendant has filed a motion to dismiss the complaint, pursuant to Rules 12(b)(1) and (b)(6). Rule 12(b)(1) is invoked because defendant takes the position that certain of plaintiff's theories fall within the exclusive jurisdiction of the National Labor Relations Board.

Although defendant has filed no materials beyond the pleadings in support of this motion, it relies on certain facts and factual conclusions inferred from the temporary restraining order proceedings in this case. These matters beyond the pleadings cannot be considered on a motion to dismiss, since the factual record on many points is not closed. A plaintiff is not required to prove its case on the merits at a preliminary hearing. *E. g., Progress Development Corporation v. Mitchell*, 286 F.2d 222, pp. 233–34 (7th Cir. 1961). For the purposes of this motion, therefore, the allegations of the complaint are taken as true.

Plaintiff attached the collective bargaining agreement between itself and defendant to the complaint. In paragraph 9 it alleges that "Article VI of the Contract also contains a mandatory arbitration clause which requires that all grievances *caused by a violation of the parties' agreement* be submitted to the joint arbitration committee and investigated and resolved for at least seven (7) days before any stoppage of work can occur" (emphasis added). While plaintiff concludes that Article VI constitutes a mandatory arbitration clause, plaintiff's allegation limits the scope of that clause to grievances flowing from a violation of the agreement.

Plaintiff is a sub-contractor of Maxcon Construction and Development Company,

d/b/a Lake Zurich Construction, Inc. (hereinafter referred to as the general contractor) for certain work on a project in Lake Zurich, Illinois. Plaintiff alleges that defendant, since July 12, 1979 and continuing to date, has directed a work stoppage among the employees covered by plaintiff's collective bargaining agreement with defendant. Plaintiff specifically alleges that plaintiff's employees represented by defendant were instructed to cease working on this project while a picket line was posted at the jobsite. Paragraph 12 conclusorily alleges that the work stoppage resulted from "grievances over the rights and obligations of the parties under the contract when common situs job sites are subject to alleged area picketing . . . . Such employee and union grievances are subject to the seven (7) day mandatory arbitration provision of Article VI." This mixed conclusion of law and fact is in dispute.

In Count II, paragraph 35, plaintiff alleges that the purpose of defendant's conduct and of this work stoppage is to force plaintiff to cease doing business with the general contractor, or in the alternative to force the general contractor to stop doing business with any non-union contractors on the job site. To remedy these conditions, plaintiff offers a variety of legal theories and prayers for relief.

I. *The availability of injunctive relief under § 301.*

Paragraphs 10 through 18 of the first amended complaint contain plaintiff's allegations in support of injunctive relief. The exact nature of the prayer is unclear; however, it is apparent that plaintiff seeks injunctive relief against the strike pending arbitration, pursuant to § 301. Defendant contends that such injunctive relief is barred by the Norris-LaGuardia Act, 29 U.S.C. § 101, *et seq.*

The leading case in this area is *Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). In part IV of that decision, the Court held that some accommodation is necessary between the seemingly absolute terms of the Norris-LaGuardia Act and the policy considerations underlying § 301(a). But in part V of that decision, the Court emphasized that its holding was a narrow one: "We deal only with the situation in which a collective-bargaining contract contains a mandatory grievance adjustment or arbitration procedure." 398 U.S. at 253, 90 S.Ct. at 1594. The Court further emphasized that injunctive relief is not appropriate as a matter of course in every case of a strike "over an arbitrable grievance." 398 U.S. at 254, 90 S.Ct. at 1594. The Court quoted from the *Sinclair* dissent, in overruling that decision, as follows:

When a strike is sought to be enjoined because it is over a grievance which both parties are contractually bound to arbitrate, the District Court may issue no injunction until it first holds that the contract *does* have that effect; and the employer should be ordered to arbitrate, as a condition of his obtaining an injunction against the strike.

*Ibid. Boys Markets* established at least two threshold requirements to avoid the prohibition of the Norris-LaGuardia Act: (1) that the collective bargaining contract contain a mandatory grievance adjustment or arbitration procedure, and (2) that the parties are contractually bound to arbitrate the dispute giving rise to the strike.

This interpretation of *Boys Markets* was confirmed in *Buffalo Forge Co. v. United Steelworkers of America*, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976). 428 U.S. at 407, 96 S.Ct. at 3147:

The driving force behind *Boys Markets* was to implement the strong Congressional preference for the private dispute settlement mechanisms agreed upon by the parties. Only to that extent was it held necessary to accommodate § 4 of the Norris-LaGuardia Act to § 301 of the Labor-Management Relations Act and to lift the former's ban against the issuance of injunctions in labor disputes. Striking over an arbitrable dispute would interfere with and frustrate the arbitral processes by which the parties had chosen to settle a dispute.

The Court in *Buffalo Forge* held that *Boys Markets* was not controlling there, because "the strike was not *over* any dispute between the Union and the employer that was even remotely subject to the arbitration provisions of the contract." *Ibid.* That strike was in sympathy to a primary strike and had neither the purpose nor the effect of denying or evading an obligation to arbitrate.

The Court in *Buffalo Forge* expressly held that an injunction could not be authorized solely on the ground that the strike violated a no-strike clause in the contract. 428 U.S. at 409, 96 S.Ct. at 3148. While the applicability of that no-strike clause to the sympathy strike constituted an arbitrable issue, the possible remedy was an order to arbitrate, rather than an injunction pending the arbitrator's result. 428 U.S. at 410, 96 S.Ct. at 3149. Thus, even though the strike *produced* an arbitrable dispute in light of the express no-strike clause, it did not arise from an arbitrable dispute.

■ Article VI of the contract herein contains the no-strike provision:

> [Plaintiff and defendant] . . . hereby agree that there shall be no lockout by [plaintiff] . . . or strikes, stoppages or abandonment of work by [defendant] . . . . . All grievances caused by the violation of the working agreement, shall be first investigated by arbitration committee of the Lake County Contractors Association and committee representing the Cement Masons Local No. 362 within seven (7) days before any stoppage of work occurs. It is understood that this clause applies to members of the Lake County Contractors Association only.

On its face, the Article provides for an investigation, perhaps in aid of conciliation, which may or may not constitute binding arbitration. The seven day limitation before work ceases does indicate that some binding resolution by the investigators may be intended. However, plaintiff has sought discovery in an attempt to demonstrate that the bargaining history and practice underlying this provision clarifies its vagaries to this extent. Until this clarification has been accomplished, we find that the bare language of Article VI is not sufficiently clear to amount to a "mandatory grievance adjustment procedure" within the meaning of *Boys Markets*.

■ Furthermore, the complaint does not state a claim for injunctive relief, since the strike must also *arise from* a dispute that is subject to a mandatory contract procedure. There is no specific factual allegation that some such dispute preceded this strike. On the contrary, the complaint makes it clear that the dispute giving rise to this strike was not the result of a dispute covered by this agreement. Plaintiff expressly alleges that defendant's conduct was intended to impose secondary pressure on the general contractor (those theories are discussed below). Plaintiff cannot be heard to argue that defendant was attempting to draw neutrals into the battle, to put pressure on the general contractor, and at the same time allege that a primary dispute, subject to a mandatory contract adjustment procedure, gave rise to this strike.

Paragraph 12 does not cure this problem. It essentially says no more than that a dispute exists between the parties regarding the applicability of the no-strike clause in this context. *Buffalo Forge* expressly held that such a dispute, albeit it may be arbitrable, cannot justify an injunction pending the arbitrator's decision. Norris-LaGuardia therefore applies, and the prayer for injunctive relief will be dismissed.

II. *The availability of plaintiff's requested relief in money damages under § 301.*

■ Paragraphs 23–30 of the complaint seek money damages for defendant's alleged violation of Article VI. This claim survives a motion to dismiss. Essentially, this is a claim for breach of contract. The contract does contain an express no-strike clause, so plaintiff's claim is proper under § 301. However, whether defendant's conduct amounts to a breach of that clause is not readily determined, and will have to await further proceedings.

If plaintiff is correct in its contention that Article VI provides a mandatory arbitration procedure, then the question of breach of the no-strike clause would be submitted to such arbitration. However, the question of mandatory arbitration has not been decided, and this court may ultimately have to resolve it in light of the bargaining history and practices underlying this clause.

Defendant cites a few cases in support of dismissal, but none of them involved an *express* no-strike clause. Where a no-strike clause is *implied*, it is generally construed as co-extensive with the obligation to arbitrate grievances. Defendant's cases involve strikes arising from non-arbitrable disputes, where the no-strike clause was accordingly found to be inapplicable. Here an express clause remains to be construed. Defendant's motion to dismiss will be denied, to this extent.

III. *The availability of plaintiff's requested declaratory relief under § 301.*

Paragraph 31 of the complaint seeks declaratory relief, including an order prohibiting defendant and its agents from relying upon Article VI as justification for any future work stoppages during the contract term. Depending upon the outcome of this lawsuit, this court may declare the rights of the parties and interpret Article VI. But this court will not enter a prospective order that defendant cannot rely upon its own interpretation of Article VI in *future* work disputes. Similarly, plaintiff also seeks a declaratory judgment that injunctive relief is appropriate "in the event of another similar breach of contract." In light of our decision above, this prayer for prospective relief must be dismissed.

IV. *Count II.*

Section 303 of the Labor Management Relations Act permits a cause of action in damages for violations of § 8(b)(4) of the National Labor Relations Act (29 U.S.C. § 158(b)(4)). Section 303 by its terms is limited to a remedy in damages. Plaintiff seeks no injunctive relief under Count II, but the "declaratory relief" sought in paragraph 51 should be stricken, for the reasons stated above.

Paragraphs 36–43 allege violations of N.L.R.A. § 8(b)(4). Section 8(b)(4) provides as follows:

It shall be an unfair labor practice for any labor organization or its agents—
(4)(i) to engage in, or to induce or encourage any individual employed by any person . . . to engage in, a strike or refusal in the course of his employment to use, manufacture, . . . or otherwise handle or work on any goods . . . or to perform any services; or (ii) to threaten, coerce, or restrain any person . . . where in either case an object thereof is—

.    .    .    .    .

(B) forcing or requiring any person . . to cease doing business with any other person . . .
*Provided*, that nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing;

.    .    .    .    .

Defendant argues that it merely engaged in primary "area standards" picketing of the general contractor. However, plaintiff's allegations of a secondary objective are sufficient to withstand a motion to dismiss. Plaintiff alleges that defendant's business agent threatened plaintiff's laborers with fines if they crossed picket lines, that the defendant union instructed plaintiff's employees not to work, that plaintiff's employees were threatened with physical violence if they worked, and that defendant's agents at all times failed to provide plaintiff's employees with requested guidance as to whether they should work at times when no nonunion subcontractor was on the job. Paragraph 35 alleges that defendant's object was to force plaintiff to cease doing business with the general contractor, or alternatively to force the general contractor to cease doing business with any non-union contractors on the job-site. These allegations, taken as true for purposes of this motion, are sufficient to state a secondary motive and conduct that goes

beyond mere informational picketing of the general contractor. See generally, *Texas Distributors, Inc. v. Local Union No. 100*, 598 F.2d 393 (5th Cir. 1979).

*"Hot Cargo."* Paragraphs 44–48 allege that defendant violated § 8(b)(4)(A) and § 8(e) because an object of its picketing is to force the general contractor to cease doing business now and in the future with any and all non-union subcontractors. Section 8(e) in part declares illegal any "hot cargo" agreement to cease dealing with any other person, and § 8(b)(4)(A) forbids any secondary pressure to obtain a § 8(e) agreement. Plaintiff alleges that defendant's picketing is therefore illegal, and that plaintiff has been damaged thereby.

Defendant argues that plaintiff cannot assert any claim founded on § 8(e), absent an unfair labor practice ruling by the N.L.R.B. Defendant cites nothing that remotely supports this proposition, and it is inconsistent on its face with § 303 which permits a suit for damages arising from any § 8(b)(4) unfair labor practice. Plaintiff does not rest on § 8(e) alone, but on § 8(e) insofar as §§ 8(b)(4)(i) and (ii)(A) incorporate the § 8(e) prohibition. The § 303 remedy is independent of the remedy of unfair labor practice proceedings. See *International Longshoremen's & Warehousemen's Union v. Juneau Spruce Corp.*, 342 U.S. 237, 243–45, 72 S.Ct. 235, 239–40, 96 L.Ed. 275 (1952).

For the first time, in its reply brief, defendant suggests that the construction industry proviso to § 8(e) legitimizes such a "hot cargo" agreement. The proviso declares that nothing in § 8(e) shall apply to an agreement between a labor organization and an employer in the construction industry relating to the contracting or subcontracting of work to be done at the job site. Defendant's reliance on the proviso appears to have merit. However, *secondary* pressure utilized to secure such an agreement may be unlawful even in the construction industry. Since defendant has not briefed this point, and plaintiff has not yet had an opportunity to address it, it can be raised in defendant's answer to the complaint.

## V. *Count III.*

Count III of the complaint seeks a declaratory judgment as to plaintiff's rights under its collective bargaining agreement with defendant. Plaintiff contends that it has a right to temporarily replace cement finishers, members of defendant's union, with other employees while the cement finishers refuse to work, provided that the replacement employees receive the wages and fringe benefits called for in the bargaining agreement. The agreement is silent on this point. Defendant has not specifically attacked Count III, presumably because it will be subsumed by the merits of the other two counts.

IT IS THEREFORE ORDERED:

*Count I.* (a) Those portions seeking injunctive relief under § 301 are stricken and dismissed. (b) The complaint states a claim for damages under § 301. (c) Paragraph 31 of the complaint is stricken.

*Count II.* (a) Paragraphs 36–43 state a claim under § 303, arising from § 8(b)(4) violations. (b) Paragraphs 44–48 may or may not state a claim, depending on the construction industry proviso to § 8(e). (c) The declaratory relief sought in paragraph 51 is stricken.