968 F.2d 191
 140 L.R.R.M. (BNA) 2697, 61 USLW 2024,
122 Lab.Cas. P 10,245
 LABOR UNION OF PICO KOREA, LTD.; Jum-Soon Yoo, President of
Labor Union of Pico Korea, Ltd.; and Sung Rye Hong, General
Secretary of Labor Union of Pico Korea, Ltd.,
Plaintiffs-Appellants-Cross-Appellees,
v.
PICO PRODUCTS, INC. and Bernard Hitchcock, individually and
in his capacity as Chairman of the Board of
Directors, Director, and Chief Executive
Officer of Pico Products,
Inc., Defendants-Appellees,
Pico Products, Incorporated, Defendant-Appellee-Cross-Appellant.
 Nos. 1628, 1785, Dockets 92-7143, 92-7203.
 United States Court of Appeals,
Second Circuit.
 Argued June 8, 1992.
Decided June 24, 1992.
 
 Frank E. Deale, Center for Constitutional Rights, New York City (Ralph Shapiro, of counsel), for plaintiffs-appellants-cross-appellees.
 Gerald J. Mathews, Syracuse, N.Y. (William F. Baker, Menter, Rudin & Trivelpiece, P.C., of counsel), for defendant-appellee-cross-appellant.
 Before CARDAMONE, WINTER and MAHONEY, Circuit Judges.
 CARDAMONE, Circuit Judge:
 
 
 1
 This appeal questions the territorial scope of § 301 of the Labor Management Relations Act which provides that suits for violations of labor contracts may be brought in federal court without regard to the citizenship of the parties if the employees work in an industry affecting commerce between a foreign country and a state. A rigid and literal reading of this provision might permit the instant action to lie. But since the extraterritorial application of our laws is not favored because such may readily lead to inadvertent clashes with the laws of other nations, we cannot presume Congress intended a Korean labor contract to come within § 301's compass.
 
 
 2
 Plaintiffs, citizens and domiciliaries of South Korea, are former employees of Pico Korea, Ltd. (Korea), a South Korean corporation with its principal place of business in Seoul. The labor union that served as plaintiffs' bargaining representative is a duly formed trade union under the laws of South Korea. Korea's American connection is that it was a wholly-owned subsidiary of Pico Macom, Inc. (Macom), a Delaware corporation with its principal place of business in California. Macom is, in turn, a wholly-owned subsidiary of defendant Pico Products, Inc., a New York corporation with its principal place of business in New York. Viewing this vertical corporate structure from the other direction, Pico Products owns Macom, which in turn owned Korea.
 
 
 3
 The facts are not in dispute. Korea was incorporated in 1985 to manufacture electronic components, all of which its parent Macom purchased except for a small amount sold to other customers at Macom's direction. In April 1988 Korea experienced cash shortages, and the parent company had to advance working capital. In June 1988 the companies' workers formed a labor union. A collective bargaining agreement was signed on November 15, 1988 with their employer. James D. O'Connell signed the agreement on Korea's behalf as president. From 1986 through February 1989 O'Connell served as the executive vice-president and director of Pico Products and as a member of the Board of Directors of Macom. He was the only person serving as a director of all three corporations.
 
 
 4
 Because Korea's problems--increasing labor costs, low productivity and lack of operating capital--had an adverse impact on both Macom and Pico Products, a meeting of Pico Products' Board of Directors was held on February 23, 1989 to discuss these developments. The meeting resulted in a resolution directing Macom immediately to cease providing additional working capital to Korea. The effect of this action, not unanticipated, was that Korea went out of business.
 
 
 5
 Plaintiffs instituted the present action in the Northern District of New York (McAvoy, J.), asserting, inter alia, claims for breach of contract or, alternatively, tortious interference with advantageous contractual relationships. The essence of plaintiffs' complaint is that the shutdown of Korea did not conform to the provisions of the labor agreement. Plaintiffs predicated jurisdiction under § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. The district court held federal question jurisdiction was lacking because § 301 was "passed ... with respect to United States workers, not workers in a foreign country." Nonetheless, the action proceeded based on diversity of citizenship. The parties stipulated that New York (as opposed to South Korean) law applied.
 
 
 6
 After a bench trial, Judge McAvoy concluded that although "Pico Korea lacked autonomy over all but the most basic daily operations," piercing the corporate veil to hold Pico Products liable under the terms of the labor contract was not warranted because "there [was] insufficient proof to conclude that this control was within the hands of the defendant." The district court held plaintiffs had failed--as was required to hold Pico Products liable--"to pierce two corporate veils, not one." With respect to plaintiffs' tortious interference claim, the district court believed that though there was a valid and binding contract between plaintiffs and Korea--of which defendant was aware and the breach of which defendant induced--liability could not attach because "Pico Products' action in inducing the breach of the contract was not malicious, but rather was motivated by justifiable concerns."
 
 
 7
 Plaintiffs insist on appeal that federal law--under which they believe it is generally easier to pierce a corporate veil--should have been applied to determine the propriety of holding Pico Products liable as Korea's alter ego. We disagree and affirm the judgment in favor of defendant Pico Products on plaintiffs' state law claims substantially for the reasons stated by Judge McAvoy in his thorough opinion of December 21, 1991. Hence the merits of defendant's cross-appeal need not be reached. We write in this case because the issue of § 301's territorial scope presents a novel question.
 
 DISCUSSION
 
 8
 As in all matters of statutory construction, we start with the statute itself. Section 301 provides in pertinent part that
 
 
 9
 [s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
 
 
 10
 29 U.S.C. § 185(a). Federal courts have undertaken under this statute to develop a federal common law for the interpretation and enforcement of collective bargaining agreements, thus "requiring issues raised in suits of a kind covered by § 301 to be decided according to the precepts of federal labor policy." Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Lucas Flour Co., 369 U.S. 95, 103, 82 S.Ct. 571, 576-77, 7 L.Ed.2d 593 (1962) (emphasis added). The question presented is whether Congress planned that the sort of labor contract at issue was to be "covered by" § 301.
 
 
 11
 Congress is presumed, as one might expect, to be concerned with domestic conditions first, and for that reason laws generally apply only in those geographical areas or territories subject to the legislative control of the United States, absent Congress' clearly expressed affirmative aim to the contrary. See Foley Bros., Inc. v. Filardo, 336 U.S. 281, 285, 69 S.Ct. 575, 577-78, 93 L.Ed. 680 (1949). Plaintiffs carry the burden of demonstrating a Congressional purpose to overcome the presumption against extraterritorial application. See EEOC v. Arabian American Oil Co., --- U.S. ----, 111 S.Ct. 1227, 1231, 113 L.Ed.2d 274 (1991) (superseded by Pub.L. No. 102-166 (1991)). They attempt to meet this burden in two ways.
 
 
 12
 The first derives from the statute's language "without regard to the citizenship of the parties." According to plaintiffs, the plain meaning of this language is clear--s 301 and federal law govern the resolution of this suit irrespective of the fact that plaintiffs are citizens of South Korea. This argument is misplaced because the issue is not plaintiffs' citizenship, but rather whether the labor agreement at issue is of the type Congress planned on having § 301 control. Merely because § 301 grants federal jurisdiction without regard to the citizenship of the parties does not mean federal jurisdiction exists without consideration of the nature of the collective bargaining agreement at issue. The phrase "without regard to the citizenship of the parties" simply establishes federal question jurisdiction, see International Longshoremen's & Warehousemen's Union v. Juneau Spruce Corp., 342 U.S. 237, 241-42, 72 S.Ct. 235, 238-39, 96 L.Ed. 275 (1952), and does not overcome the broad presumption against extraterritorial application of federal law. In other words, when it is triggered § 301 provides federal question jurisdiction. The question before us is the threshold one: was § 301 triggered in this case.
 
 
 13
 Determining whether § 301 has application brings us to plaintiffs' second attempt to overcome the presumption in favor of territorial limitation. It is their contention that the only limitation on § 301's applicability is that the industry in which employees covered by the collective bargaining agreement work must be one "affecting commerce." And, plaintiffs continue, the term "commerce" is defined for purposes of § 301 to include trade "between any foreign country and any State." 29 U.S.C. § 152(6). See id. § 142(1), (3). We assume the activities of Pico Korea, though the issue was not addressed by the district court, affect commerce within the meaning of § 301. According to plaintiffs, this conclusion should end the inquiry, for the statute's language is clear and must control.
 
 
 14
 We agree that Congress has authority under the commerce clause to make the instant labor contract subject to § 301. See Arabian American, 111 S.Ct. at 1230. Yet, it remains to be decided whether when Congress enacted § 301 it meant to exercise the full limits of its power. Id. In the present instance Supreme Court precedent suggests otherwise. The Supreme Court has held that the Eight Hour Law--requiring that contracts to which the United States is a party compensate laborers at time and a half for work in excess of eight hours, see 37 Stat. 137, 54 Stat. 884, 40 U.S.C. §§ 324, 325a, repealed by Pub.L. No. 87-581, 76 Stat. 360 (1962), 40 U.S.C. §§ 328-30--does not apply to contracts performed in foreign countries. See Foley Bros., 336 U.S. at 284-85, 69 S.Ct. at 577-78. That law, like § 301, made no distinction between alien and citizen labor. The Court took this to indicate that the statute was intended to apply only where the labor conditions of both citizen and alien employees are a probable concern of Congress. "Such places do not include foreign countries." Id. at 286, 69 S.Ct. at 578. The Court specifically rejected the assertion that because the statute said "every contract" it encompassed the contract at issue, holding that the presumption against extraterritorial application had not been overcome. See id. at 287 & n. 3, 69 S.Ct. at 578 & n. 3 (quoting American Banana Co. v. United Fruit Co., 213 U.S. 347, 357, 29 S.Ct. 511, 513, 53 L.Ed. 826 (1909)).
 
 
 15
 Similarly, Benz v. Compania Naviera Hidalgo, 353 U.S. 138, 77 S.Ct. 699, 1 L.Ed.2d 709 (1957), held that the LMRA did not govern a dispute stemming from the picketing of a foreign ship operated entirely by foreign seamen under foreign articles while the vessel was temporarily in an American port. Although Congress could have decided to regulate the matter in light of the fact that the vessel was in the territorial waters of the United States, the Supreme Court ruled that the Congressional scheme did not contemplate such a sweep because the LMRA "is concerned with industrial strife between American employers and employees." See id. at 142-44, 77 S.Ct. at 701-03.
 
 
 16
 In the case at bar, the employees of Pico Korea are citizens and domiciliaries of South Korea, doing work in South Korea, for a South Korean company. The fact that Pico Korea is a wholly-owned subsidiary of a United States corporation does not change the character of this labor dispute into one over which Congress can be presumed to have intended § 301 to control. Compare McCulloch v. Sociedad Nacional de Marineros de Honduras, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963) (National Labor Relations Act, 29 U.S.C. §§ 151 et seq. (NLRA), does not govern competing unions' claims to represent alien crews of ships owned by foreign subsidiaries of United States' corporation that make regular trips between American and foreign ports transporting parent's products), with International Longshoremen's Ass'n, Local 1416 v. Ariadne Shipping Co., 397 U.S. 195, 90 S.Ct. 872, 25 L.Ed.2d 218 (1970) (NLRA applies to dispute over picketing to protest wages paid by foreign vessels to American sailors working in American ports).
 
 
 17
 Nor does the fact that the work performed by Pico Korea's employees may "affect commerce" within the meaning of § 301 suffice to demonstrate a contrary congressional aim. See Arabian American, 111 S.Ct. at 1231-32 ("boilerplate language" concerning reach of statute enacted under Congress' power to regulate commerce does not overcome presumption against extraterritoriality). See also Juneau Spruce, 342 U.S. at 242, 72 S.Ct. at 238-39 (though § 301 enacted partially to limit obstacles to suit in federal court, jurisdiction nonetheless may be limited by territorial considerations).
 
 
 18
 In the present "global economy" ever-expanding trade makes it increasingly possible that foreign industry might affect commerce "between [a] foreign country and any State." But to construe § 301 as governing collective bargaining agreements in such an industry "would inevitably lead to embarrassment in foreign affairs and be entirely infeasible in actual practice." McCulloch, 372 U.S. at 19, 83 S.Ct. at 676. That the dispute in this case does not focus on the interpretation, per se, of the labor contract is not relevant. For were we to accept jurisdiction under § 301 merely for the purpose of deciding whether Pico Products is liable for the agreement's breach under federal labor law, it would lead to federal courts being called upon to determine if agreements such as this were in fact breached. Such a result would conflict with " '[t]he general and almost universal rule ... that the character of an act as lawful or unlawful must be determined wholly by the law of the country where the act is done.' " New York Cent. R.R. v. Chisholm, 268 U.S. 29, 31, 45 S.Ct. 402, 402, 69 L.Ed. 828 (1925) (Federal Employers' Liability Act does not govern in damages action brought on behalf of United States citizen employed by United States railroad injured in Canada) (quoting American Banana, 213 U.S. at 356, 29 S.Ct. at 512).
 
 
 19
 If Congress wants federal courts to enforce collective bargaining agreements between foreign workers and foreign corporations doing work in foreign countries according to the body of labor law developed pursuant to § 301, such legislative purpose must be made unmistakably clear. The statute evinces no such purpose. Compare Steele v. Bulova Watch Co., 344 U.S. 280, 284-86, 73 S.Ct. 252, 254-56, 97 L.Ed. 319 (1952) (Lanham Act, defining "commerce" as "all commerce which may lawfully be regulated by Congress," 15 U.S.C. § 1127, governs suit by United States corporation seeking damages for acts of trademark infringement and unfair competition done in a foreign country by a citizen and resident of the United States). The subject collective bargaining agreement therefore is not governed by § 301.
 
 
 20
 Hence, whether Pico Products is liable as Pico Korea's alter ego is not to be determined according to the precepts of federal labor law. From this it follows that plaintiffs' suit for tortious interference with the labor agreement also is not governed by federal law.
 
 CONCLUSION
 
 21
 The judgment appealed from accordingly is affirmed.