MANSMANN, Circuit Judge,
concurring.
While I agree with the general principles expounded by the majority and the majority’s ultimate resolution of the issues presented, I write separately to clarify what for me are the essential policy considerations that weigh in favor of the result reached.
I.
The central issue we are called upon to decide is whether the temporary transfer provision of the Bankruptcy Amendments and Federal Judgeship Act of 1984 (“BAF-JA”), confers upon the Third Circuit Judicial Council the authority to assign a United States bankruptcy judge temporarily to the United States District Court for the District of the Virgin Islands. Specifically, we must determine whether Congress intended the term “judicial district” as used in section 155(a) of the BAFJA to include territorial districts such as the Virgin Islands.[1]
*105 A.
Our starting point, as with any case construing a statute, is the language of the statute itself. Robinson v. Shell Oil Co., 519 U.S. 337, 117 S.Ct. 843, 846, 136 L.Ed.2d 808 (1997); International Primate Protection League v. Administrators of Tulane Educ. Fund, 500 U.S. 72, 79, 111 S.Ct. 1700, 114 L.Ed.2d 134 (1991). As always, we interpret the language of the BAFJA by reference to the language itself, the specific context in which the language is used, and the broader context of the BAFJA as a whole. Robinson, 117 S.Ct. at 846. In addition, we interpret the BAFJA in a manner which best effectuates Congressional intent and the legislative purpose underlying its adoption. International Longshoremen’s & Warehousemen’s Union v. Juneau Spruce Corp., 342 U.S. 237, 241-43, 72 S.Ct. 235, 96 L.Ed. 275 (1952).
As noted by the majority, the BAFJA was enacted to respond to the United States Supreme Court’s decision in Northern Pipeline Const. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), holding that Congress’ broad grant of jurisdiction to non-Article III bankruptcy judges was unconstitutional. In July 1984, Congress passed the BAFJA in order to create a nationwide, comprehensive judicial bankruptcy system that complied with Northern Pipeline.
In the interim period between Northern Pipeline and the enactment of the BAFJA, the courts enacted emergency rules that complied with Northern Pipeline to govern the operation of the bankruptcy courts until Congress acted. See Jean K. FitzSimon and Andrea J. Winkler, Legislative History of the Bankruptcy Amendments & Federal Judgeship Act of 1984, Collier on Bankruptcy, App. Vol. E, Pt 6-87, 6-99 (15th ed.1997). The emergency rules were held to be justified in order to avoid inundating the district courts with bankruptcy cases when an entire system of bankruptcy judges with specialized knowledge and expertise was already in place. In re Stewart, 741 F.2d 127, 132 n. 6 (7th Cir.1984).
In upholding the constitutionality of one such emergency rule, our sister court of appeals for the Second Circuit offered the following insight into the purpose and policy behind establishing bankruptcy courts:
There are also strong policy reasons for allowing bankruptcy judges to enter final judgments in traditional bankruptcy disputes. First, the practice eliminates the need for the district courts to enter every bankruptcy case at the beginning. District courts are thus free to attend to other matters on their crowded calendars, giving all litigants a better opportunity to have their day in court. Second, all eases are not appealed. There should be at least one adjudication made by a judge with expertise in bankruptcy law.
In re Kaiser, 722 F.2d 1574, 1581 (2d Cir.1983). The BAFJA enacted by Congress in 1984 was based largely upon the emergency rules adopted by the courts.
B.
Section 152(a) of the BAFJA provides for the appointment of numerous bankruptcy judges for the “several judicial districts” in the states listed in section 152(a)(2). In addition, the BAFJA includes the following provision relating to the establishment of bankruptcy judges in territories such as the Virgin Islands:
The judges of the district courts for the territories shall serve as the bankruptcy judges for such courts. The United States court of appeals for the circuit within which such a territorial district court is located may appoint bankruptcy judges under this chapter for such district if authorized to do so by the Congress of the United States under this section.
28 U.S.C. § 152(a)(4)(1994). We have not appointed a bankruptcy judge to the Virgin Islands under this provision because Congress has yet to authorize such an appointment.
As the initial BAFJA provision establishing a bankruptcy system for the territories, section 152(a)(4) is central to our analysis of whether Congress intended the term “judicial district” to encompass the Virgin Islands. By using the phrase “for such district” in this section, Congress expressed its intention to include the territories when employing the *106 term “district.” Because the terms “district” and “judicial district” are used interchangeably within the BAFJA and because the word “judicial” has no limiting connotation in connection with courts in the territories, Congress’ clear' expression that the term “district” includes the Virgin Islands extends equally to the term “judicial district.” See generally 28 U.S.C. § 156 (1994)(discussing appointment of law clerks for bankruptcy judges and using the term “district” in section 156(f) and “judicial district” in section 156(e) interchangeably).[2]
This interpretation of the terms “judicial district” and “district” is consistent with their use in the BAFJA as a whole. If Congress were to authorize and we were to appoint a bankruptcy judge to the Virgin Islands as contemplated by section 152(a)(4), only our interpretation of these terms would give the statute the meaning Congress intended. For example, section 158 which governs appeals from bankruptcy judge decisions provides that appeals “shall only be taken to the district court for the judicial district in which the bankruptcy judge is serving.” This' section contemplates that a decision by a duly authorized and appointed Virgin Islands bankruptcy judge may only be appealed to the District Court of the Virgin Islands. See In re Kool, Mann, Coffee & Co., 23 F.3d 66, 67-68 (3d Cir.1994)(holding that section 158 requires that an appeal from a bankruptcy judge sitting by designation in the Virgin Islands must be taken to the district court).
If we were to interpret the term “judicial district” as excluding the Virgin Islands, the BAFJA would contain no provision to govern direct appeals from a Virgin Islands bankruptcy judge. In light of the fact that Congress undisputedly contemplated the future appointment of such a judge, it is inconceivable that Congress would provide no provision to appeal from that judge’s decisions. This is especially true given that the BAFJA was adopted to address Northern Pipeline, the Supreme Court decision that curtailed Congress’ former broad grant of jurisdiction to non-Article III bankruptcy judges. Section 158 therefore must include appeals from bankruptcy judges in the Virgin Islands, and, a fortiori, the term “judicial district” as used therein must include the Virgin Islands. See also 28 U.S.C. §§ 154(a), 156, 157(a)(1994)(setting forth general provisions that would have no force in relation to a duly appointed Virgin Islands bankruptcy judge if the terms “district” and “judicial district” were meant to exclude the Virgin Islands).
As noted by the majority, 28 U.S.C. § 451, may be cited as casting doubt upon our determination that the terms “judicial district” and “district” include the Virgin Islands. Section 451 defines those terms as “the districts enumerated in Chapter 5,” i.e. districts containing only Article III courts. See 28 U.S.C. § 451 (1994). I agree with the majority, however, that this section is not controlling in light of the fact that it was codified 36 years prior to the BAFJA and because this definition does not comport with the logical meaning of the terms as used in the BAFJA. See, e.g., Juneau Spruce, 342 U.S. at 241, 72 S.Ct. 235 (rejecting a historical definition also found in section 451 where that definition did not comport with the logical meaning of the term that best effectuated the purpose of the statute). At most, section 451 renders these terms facially ambiguous, an ambiguity that can be conclusively resolved by examining the legislative purpose behind adoption of the BAFJA.
C.
As the majority recognizes, the approach taken by the Court in International Longshoremen’s & Warehousemen’s Union v. Juneau Spruce Corp., 342 U.S. 237, 72 S.Ct. 235, 96 L.Ed. 275 (1952), is particularly instructive to our analysis of the proper interpretation of the BAFJA in light of the legislative purpose underlying its adoption. In Juneau Spruce, the Court was faced with determining whether the District Court of the Territory of Alaska was a “district court of the United States” for purposes of conferring upon it jurisdiction for actions brought under the Labor Management Relations Act (“LMRA”). Juneau Spruce, 342 U.S. at 240, *107 72 S.Ct. 235. While the Court recognized that the words “district court of the United States” are commonly used to describe Article III courts, the Court nevertheless held that in the context of the LMRA, that term was used to describe courts which exercise the jurisdiction of district courts. Id. at 241, 72 S.Ct. 235.
In so holding, the Court relied on the legislative purpose of the LMRA. The Court found that Congress enacted the LMRA to eliminate obstacles to suits in federal courts. Furthermore, the Court relied on the fact that the LMRA “extends its full sweep to Alaska as well as to the states and the other territories. The trial court is indeed the only court in Alaska to which recourse could be had.” Id. at 242, 72 S.Ct. 235. Recognizing that applying the LMRA to the District Court of Alaska does not give the words “district court of the United States” their literal and historic meaning, the Court nonetheless embraced this reading as effectuating the uniform, national policy and purpose of the LMRA.
As previously noted, the BAFJA was sweeping legislation enacted to establish a national bankruptcy system that includes the Virgin Islands. The BAFJA includes provisions relating to the territories and specifically provides for the appointment of bankruptcy judges to the territories if authorized by Congress. As sweeping legislation designed to establish a national bankruptcy system, the BAFJA is at least as broad as the LMRA at issue in Juneau Spruce. In addition, as with the LMRA, if general terms within the BAFJA such as “district court” and “judicial district” do not include the District Court of the Virgin Islands, there are circumstances under which no court within the Virgin Islands would be able to effectuate its general provisions.[3]
Furthermore, the purpose of establishing a nationwide bankruptcy system is to alleviate the district courts of excessive workloads and to provide a system where judges with experience and expertise in bankruptcy matters can handle bankruptcy claims. In re Kaiser, 722 F.2d 1574, 1581 (2d Cir.1983). In fact, in addition to revising the bankruptcy system, the BAFJA also created 85 new federal judgeships in order to “help alleviate the tremendous litigation backlogs in our courts.” Collier on Bankruptcy, App. Vol. E, Pt. 6-146 (15th ed. 1997)(Statements from floor, 130 Cong. R.H. 7497).
The temporary transfer provision in the BAFJA is analogous to the temporary transfer of district judges found at 28 U.S.C. § 291 (1994). Transfer provisions such as these are to be used to “deal with an administrative problem” and are purely “ministerial”. See Meeropol v. Nizer, 429 U.S. 1337, 1339, 97 S.Ct. 687, 50 L.Ed.2d 729 (1977)(discussing the nature of 28 U.S.C. § 291). Generally, such provisions are properly used to assist a circuit with a heavy workload. Id.
Given that Congress specifically included the Virgin Islands within the scope of the BAFJA, there is no rational reason for Congress to have intended to exclude the Virgin Islands from the transfer provision in the BAFJA and thereby preclude the District Court of the Virgin Islands from obtaining aid and specialized expertise in handling their bankruptcy caseload. Our construction of the terms “judicial district” and “district” as including the Virgin Islands therefore best effectuates the purpose and scope of the BAFJA generally and the transfer provision specifically. Accordingly, because the term “judicial district” must be read to include the Virgin Islands, section 155(a) grants the Third Circuit Judicial Council the authority *108 to transfer a bankruptcy judge temporarily to serve in the Virgin Islands.
II.
In light of the foregoing discussion, it is clear that the BAFJA affirmatively confers upon the Council the authority for a temporary transfer of a bankruptcy judge to the Virgin Islands. At a minimum, however, the BAFJA is silent on the Council’s authority; the BAFJA contains no affirmative Congressional statement denying the Council the authority to transfer bankruptcy judges to the Virgin Islands. Because the BAFJA contains no such affirmative restriction, I agree with the majority’s conclusion that the Council has the inherent authority to make such a transfer pursuant to 28 U.S.C. § 332(d)(1994).
III.
I also agree with the majority’s conclusion that regardless of the Council’s authority to transfer temporarily a bankruptcy judge to the Virgin Islands under either the BAFJA or 28 U.S.C. § 332(d), Judge Cosetti’s sanction orders are valid for the reasons the Court articulated in Willy v. Coastal Corp., 503 U.S. 131, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992). In light of our determination that both the BAFJA and 28 U.S.C. § 332(d) grant the Council the authority to make temporary transfer to the Virgin Islands, however, a specific determination on the validity of Judge Cosetti’s sanction orders is unnecessary to our resolution of this appeal. I write separately with regard to this point only to note that while I agree with the majority’s conclusion on the independent validity of Judge Cosetti’s sanction orders, I view this issue as secondary to our analysis of the Council’s authority to make a temporary transfer and consider it to be merely a supplemental ground for our decision.

. Section 155(a) of the BAFJA provides as follows:
A bankruptcy judge many be transferred to serve temporarily as a bankruptcy judge in any judicial district other than the judicial district for which such bankruptcy judge was appointed upon the approval of the judicial council of each of the circuits involved.
28 U.S.C. § 155(a)(1994)(emphasis added).

. The fact that Congress has traditionally defined the terms "district” and "judicial district” as synonyms further supports this conclusion. See 28 U.S.C. § 451 (1994).

. The following example illustrates this point. Section 157 provides that “[e]ach district court may provide that any or all cases under title 11 ... shall be referred to the bankruptcy judges for the district.” 28 U.S.C. § 157(a)(1994). Suppose that a bankruptcy judge was appointed to the Virgin Islands under section 152(a)(4) after authorization by Congress. If general terms in the BAFJA such as "district court” or “judicial district” were read to exclude the District Court of the Virgin Islands, technically, the District Court of the Virgin Islands would never have the authority to refer bankruptcy cases pursuant to section 157(a) to a bankruptcy judge properly appointed under section 152(a)(4). In construing the BAFJA, we must presume that Congress did not intend this absurd result. See, e.g., United States v. Schneider, 14 F.3d 876, 880 (3d Cir.1994)(stating that "[i]t is the obligation of the court to construe a statute to avoid absurd results. ...").